VIVIAN CROSS, EMPLOYEE, PLAINTIFF v. BLUE CROSS/BLUE SHIELD, EMPLOYER; WAUSAU INSURANCE COMPANY, CARRIER; DEFENDANTS

No. 9010IC1187

(Filed 15 October 1991)

**Master and Servant § 68 (NCI3d) — workers' compensation — stress symptoms — causal relationship to job not shown**

The Industrial Commission did not err in finding that there was no causal relationship between plaintiff's employment in 1987 as a medical review examiner and her stress-

related symptoms and that plaintiff thus did not suffer from a compensable occupational disease, although a portion of a psychiatrist's testimony arguably supported plaintiff's contention, where there was evidence that plaintiff was having difficulty performing her duties, and the psychiatrist further testified that plaintiff told him her sister had died in 1985, her brother had died in 1986, she had undergone an abortion during the summer of 1987, and she had ended a relationship with her boyfriend. Stress caused by the inability properly to perform one's job is not the same as stress caused by the duties of the job itself.

**Am Jur 2d, Workmen's Compensation § 301.**

**Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.**

APPEAL by plaintiff from the Opinion and Award of the North Carolina Industrial Commission entered 25 May 1990. Heard in the Court of Appeals 20 August 1991.

*Taft, Taft & Haigler, by Robin E. Hudson, for plaintiff appellant.*

*Teague, Campbell, Dennis & Gorham, by Thomas M. Clare, for defendant appellees.*

COZORT, Judge.

Plaintiff Vivian Lee Cross began working at Blue Cross/Blue Shield in Durham, North Carolina, on 18 May 1987 as a medical review examiner. On 2 September 1987, after numerous absences, plaintiff resigned from her position citing job-related stress as the reason. On 30 September 1987, plaintiff filed for benefits under the Workers' Compensation Act, alleging job-related stress disorder. A Deputy Commissioner for the North Carolina Industrial Commission (Commission) denied plaintiff's claims for benefits, concluding she did not suffer from a compensable occupational disease. The Commission affirmed, adopting the opinion of the Deputy Commissioner. Plaintiff appeals. We affirm.

The sole issue on appeal is whether the Commission erred in denying the plaintiff benefits on the basis that she did not suffer from a compensable occupational disease. Our role in reviewing the Commission's decision is limited to determining whether there is any competent evidence to support the findings of fact, and

whether the findings of fact justify the conclusions of law. *Buchanan v. Mitchell County*, 38 N.C. App. 596, 599, 248 S.E.2d 399, 401, *cert. denied*, 296 N.C. 583, 254 S.E.2d 35 (1979).

Plaintiff contends the Commission failed to properly consider the medical evidence in finding that

> 4. There is no evidence in the record to establish that any of plaintiff's physical or psychological conditions for which she sought treatment were causally related to her employment with defendant.

Plaintiff argues that since "all of the medical evidence indicated that the plaintiff's symptoms . . . were directly precipitated by the conditions of her job," the Commission must have based its decision on a misapprehension of the law. We disagree.

The evidence shows that Ms. Cross was employed at Blue Cross/Blue Shield from 18 May 1987 to 2 September 1987. As a medical review examiner, plaintiff was responsible for receiving telephone requests for authorization of medical procedures and expenses, processing the authorizations, and distributing information on medical claims. Plaintiff began having difficulty performing her duties and received at least three memoranda concerning her unsatisfactory performance. Plaintiff also missed several days of work, often without informing her employer and without offering requested medical verifications for the absences.

During her employment, plaintiff began experiencing muscle spasms, nervousness, high blood pressure and other ailments. Plaintiff's personal physician prescribed a sedative. Ms. Cross testified that, beginning about the end of July, she went to the Duke University Emergency Room three or four times a week. On 19 August 1987, an emergency room physician attending to Ms. Cross recommended that she seek psychiatric treatment if her symptoms did not improve. On 8 September 1987, Ms. Cross went to the North Carolina Memorial Hospital Psychiatric Clinic where Dr. Albert J. Naftel, Jr., a third-year psychiatry resident, examined her.

Plaintiff relies heavily upon Dr. Naftel's deposition testimony to support her claim that her physical and psychological difficulties were related to her employment. Specifically, she points to the following testimony:

CROSS v. BLUE CROSS/BLUE SHIELD

[104 N.C. App. 284 (1991)]

Q Now, if you assume that the Industrial Commission finds that her job was as I described it to you, do you have an opinion satisfactory to yourself to a reasonable degree of medical probability as to whether working in that kind of job would increase her risk of psychiatric symptoms above members of the general public?

A I think that when you have someone that is having depressive symptoms, adjustment symptoms, anxiety, somatic complaints, they're going to have difficulty handling any sort of stressor, including work. And that if you can decrease some of the stresses, yes, it will improve.

Q The question was, do you think the job would have increased her risk of—

A I think that stressors, job included, can exacerbate symptoms, okay?

Q Okay.

* * * *

Q The question has more to do with whether the job, her job, would have increased her risk of developing symptoms or having them exacerbated as compared to somebody else in the general population who did not have that kind of job. Would she be at a higher risk of that kind of thing, is the question.

A Anyone with—yeah, I don't know quite how to answer you. Anyone that has these—that is having an adjustment disorder, any stressor will increase the risk for their symptoms becoming worse.

Q Okay.

A You know, one stressor alone may not have caused—or really affected her, but she had numerous stressors over a period of time, and any stressor is going to definitely increase anxiety itself.

Q Does the kind of job that I describe to you sound like the kind of job that would do that?

A It doesn't sound pleasant. I mean, it sounds like the job you described would be stressful for someone that was—it

sounds like you're saying she was having trouble keeping up with what was going on there, and generally for people that's stressful.

Although this portion of Dr. Naftel's testimony arguably supports plaintiff's contention, the Commission is free to accept or reject all or part of a witness's testimony. *See Blalock v. Roberts Co.,* 12 N.C. App. 499, 504, 183 S.E.2d 827, 830 (1971).

Moreover, the North Carolina Supreme Court has previously concluded in *Rutledge v. Tultex Corp.,* 308 N.C. 85, 105, 301 S.E.2d 359, 372 (1983), that "the Commission may, of course, consider medical testimony, but its consideration is not limited to such testimony. It may consider other factual circumstances in the case."

For example, in *Harvey v. City of Raleigh Police Dept.,* 96 N.C. App. 28, 384 S.E.2d 549, *cert. denied,* 325 N.C. 706, 388 S.E.2d 454 (1989), we affirmed the Commission's decision denying benefits to the widow of a police officer alleging that his employment caused dysthymic disorder (depression) ultimately resulting in his suicide. Despite medical expert testimony to the contrary, the Commission found that the police officer's employment did not significantly contribute to or become a significant factor in the development of his disorder. *Id.* at 31, 384 S.E.2d at 550. We found the Commission's findings were supported by evidence that the deceased was having financial and home environment difficulties, was being sued for his actions as a security officer, and was under investigation for shoplifting. *Id.* at 33-34, 384 S.E.2d at 552. In addition, there was expert medical testimony impeaching the credibility of the medical testimony supporting a causal relationship between the employment and the disorder. *Id.* at 32-33, 384 S.E.2d at 551-52.

Similarly, we find in the case at bar that the Commission could reasonably conclude from all the evidence that the plaintiff did not establish a causal relationship between her employment and stress-related symptoms. In addition to the above-quoted testimony, Dr. Naftel further testified that plaintiff told him that her sister had died in 1985, her brother had died in 1986, that she had undergone an abortion during the summer of 1987, and that she had ended a relationship with her boyfriend.

Furthermore, there was evidence that plaintiff was having difficulties performing her duties. We agree with defendant that

stress caused by the inability to properly perform one's job is not the same as stress caused by the duties of the job itself.

Plaintiff has the burden of proving compensability for an occupational disease. *Moore v. Stevens & Co.*, 47 N.C. App. 744, 269 S.E.2d 159, 301 N.C. 401, 274 S.E.2d 226 (1980). The Commission found that there was no evidence to establish a causal relationship between plaintiff's employment and her symptoms. This finding of fact is supported by the evidence and in turn supports the Commission's conclusion of law that plaintiff did not suffer from a compensable occupational disease.

Therefore, the Opinion and Award of the Industrial Commission is

Affirmed.

Judges ORR and LEWIS concur.