This is a claim for continuing temporary total disability benefits based upon mental injury as the result of an injury by accident on April 9, 1990. Plaintiff sustained permanent partial impairments to her left arm and spine in the lumbar area, each rated at 15%. The psychiatrist who evaluated her, Dr. Wilson S. Comer, Jr., testified that plaintiff suffered from a personality or adjustment disorder with depression prior to 1990, that caused some debilitating episodes. Based on his sessions with her and review of her considerable medical record, he determined that the compensable "injury and the disability and pain that followed that", "directly caused an exacerbation of the underlying [mental] condition . . . causing a disability that was not there or was much milder before." Depo. of Dr. Comer, pps. 33 13. Questioned as to whether the physical injury "precipitated" this condition, Dr. Comer described it as a difference in "degree" or "a difference in the quantity rather than quality of symptoms," and offered the "thin skull" analogy. "The personality disorder would remain constant, but because of the personality disorder, she would be more likely to develop depression, the somatoform pain disorder, those kinds of things" due to "exacerbation of her vulnerability and fragility" and lack of normal coping skills. Most importantly, Dr. Comer testified that due to these problems in the wake of and causally related to the accident, her capacity to earn wages was dramatically affected. He was correctly informed of her period of admitted disability following the accident, and about her two failed work attempts in 1992, which illustrated her lack of normal coping skills. In the absence of specific employment records, his review of the medical records, with his specialized knowledge of mental health professionals' notations and interest in employment history, constitutes the best evidence in the record of the degree to which her "episodic" problems were debilitating prior to the injury.
Our lay reading of the medical records also tends to support the conclusion that she was capable of earning wages with substantial regularity prior to the injury, and totally disabled from doing so after. While there were probably some other days when plaintiff was not working due to the mental malady, as well as other personal reasons, it appears that there were only three inpatient admissions, during which she was obviously disabled. See also Depo. of Dr. Comer, p. 20. She was an inpatient at Mecklenburg County Mental Health Center from August 31 — September 4, 1989, prior to which she had been at home with her six children, but she was working the night shift at the Waffle House by September 21, 1979. She was admitted to Mecklenburg Mental Health Hospital on September 20, 1982, shortly after securing a job delivering flowers, and discharged on October 4, 1982, and it was noted that work was "going okay" for her on December 9, 1982. Her final inpatient admission prior to the accident on April 9, 1990 was at Mecklenburg Mental Health Hospital from August 16 — 21, 1989.
This case is properly characterized as a "physical/mental case" — i.e., physical insult resulting in mental injury — as opposed to the "mental/mental" or "mental/physical" scenario that requires a more difficult evaluation of whether the mental insult is "objectively" causative, "in light of the common sense viewpoint of the average man". Wolfe v. Sibley, Lindsay CurrCo., 36 N.Y.2d 505, 369 N.Y.S.2d 637, 642, 330 N.E.2d 603 (1975);Wood v. Laidlaw Transit, Inc., 77 N.Y.2d 79, 82,564 N.Y.S.2d 704, 706, 565 N.E.2d 1255, 1257 (1990); Cross v. Blue Cross Blue Shield, 104 N.C. App. 284, 409 S.E.2d 103 (1991) (abnormal reaction to normal workplace stress is not compensable);Schmidt v. UNC Charlotte, I.C. No. 910359, 4 January 1994; Martin v.Ketchum, Inc, et al., 568 A.2d 159, 164-65 (Sup.Ct. Pa., 1990);Frederick v. Hafferty Furniture Co., I.C. No. 868906, 15 August 1990. These are cases involving injuries that are so inconsequential that they must be analyzed as a mental/mental case. See, e.g., Brewington v. Rigsbee Auto Parts, 69 N.C. App. 168,316 S.E.2d 336 (1984). But this is not a case of a minor work-related injury that "triggers" or "precipitates" an extreme and unpredictable reaction in the claimant far out of proportion to what one might expect from "the average reasonable man" or normal run of employees (such as Brewington's hysteric paralysis a few days after a very mild back strain), so that the cause is seen as arising out of the employee and not the employment. While plaintiff's physical problems were more persistent and painful than her orthopaedists would have anticipated, and were worse because of her mental vulnerability as Dr. Comer testified, they were significant enough to justify substantial impairment ratings by her treating physician. The employee had an established pattern of difficulty with mental stressors, and it would have been surprising if the situational depression that most people experience due to the pain and hardship of a significant injury had not affected her more markedly than normal. Our Courts long ago established that when the physical injury is substantial enough to cause disability, pain and the likelihood of situational depression in the average or normal employee, the "thin skull" principle conventionally applied in "physical/physical" workers' compensation cases will be applicable. See, e.g., Hill v. HanesCorp., 319 N.C. 167, 173-74, 353 S.E.2d 392 (1987); Fayne v.Fieldcrest Mills, Inc. 54 N.C. App. 144, 146-147, 282 S.E.2d 539
(1981), cert. denied, 304 N.C. 725, 288 S.E.2d 380 (1982).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner, as MODIFIED to add the N.C. Gen. Stat. § 97-18(e) penalty and minor modifications, as follows:
* * * * * * * * *
STIPULATIONS
The following were entered into by the parties at the hearing before the Deputy Commissioner as:
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer/employee relationship existed between the plaintiff and the defendant-employer.
3. The Travelers Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $136.07, which yields a compensation rate of $90.71 per week.
5. Plaintiff suffered an injury by accident on April 9, 1990, resulting in an injury to her back.
6. The defendant-employer admitted liability, the parties entered into a Form 21 Agreement [approved April 28, 1993], and workers' compensation benefits were paid to plaintiff until July 1992.
7. The parties stipulated to certain medical records marked as Plaintiff's Stipulated Exhibit Number 1 along with the deposition testimony of Dr. Wilson S. Comer, Jr.
8. The issues to be determined by the Commission are: (1) whether plaintiff's psychological problems are related to the original injury by accident; and, if so, (2) what additional benefits should plaintiff receive.
* * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following:
FINDINGS OF FACT
1. As a result of plaintiff's injury by accident on April 9, 1990, she was treated by Dr. McBride for injuries that resulted in permanent partial impairments of fifteen percent (15%) to the left arm and fifteen percent (15%) of the spine in the lumbar region. When seen by Dr. Wheeler on August 23, 1990, he noted that plaintiff "manifest[ed] what appears to be secondary depression."
2. Shortly after the injury by accident, plaintiff began suffering from headaches, depression, and other psychological problems which led her to be treated by a psychiatrist, Dr. Wilson S. Comer, Jr. Dr. Comer evaluated plaintiff and diagnosed her as suffering from headaches, neurological, and psychiatric problems since the injury by accident and concluded that plaintiff has been unable to work in any sustained fashion due to these problems. She was treated with anti-depressants, psychotherapy, and counseling with a social worker.
3. As a result of the accident, plaintiff suffered from an exacerbated adjustment disorder with depression, somatoform pain disorder, and a possible post-traumatic stress disorder, and was disabled from working and likely to remain disabled until she receives intensive, sustained psychiatric treatment, possibly over a period of several years.
4. Dr. Comer defined somatoform pain disorder as a psychiatric condition characterized by pain that is due to emotional or psychiatric factors, or exacerbated greatly by those factors, either in the presence of some physical cause which is not severe enough to cause the degree of pain that the patient suffers or without any obvious physical cause for the pain. Plaintiff's preexisting mental or emotional problems were exacerbated by the pain, disability and depression resulting from the compensable physical injuries, causing her somatoform pain disorder.
5. When asked if there was any physical basis for plaintiff's complaint of pain, Dr. Comer responded, "Well, yes, there is. She's had numerous evaluations by several different neurologists who find whiplash type injuries in her neck and back and arm and they have tried various forms of treatment for that, but that's been pretty consistently diagnosed by the neurologists who have seen her."
6. On April 3, 1992, plaintiff was given a EMG, which revealed some nerve conduction abnormalities in the left arm.
7. Plaintiff's complaints center primarily on chronic pain and difficulties being physically active. She has suffered falls due to her legs giving way. Plaintiff has suffered problems with memory, concentration, mood and the inability to organize her life as well as she had prior to the accident. Dr. Comer observed her to be emotionally labile during interview, crying frequently and easily, and disorganized in her thoughts.
8. As a result of the injury of April 9, 1990, plaintiff has been too restricted by pain and emotionally fragile and labile to be able to maintain employment since her injury, as demonstrated by her failed work attempts. In addition, the unpredictability of her headaches and pain problems would interfere with her returning to work.
9. The injury by accident, which resulted in the plaintiff suffering a 15% permanent partial disability to the lumbar spine, and a 15% permanent partial disability to the left arm, caused or exacerbated a somatoform pain disorder, and an adjustment disorder with depression, which had not been a manifest part of a pre-existing borderline personality disorder for which the plaintiff had received medical assistance over a period of years preceding her accident. As Dr. Comer concluded, the plaintiff's prognosis is guarded, but with good intensive therapy by a well-trained, experienced therapist (probably, as he suggested, one who had offices closer to her home than he), plaintiff has a good chance of recovery, and little chance of recovering without it. See Depo. of Dr. Comer, pps. 7, 8, 13-14, and 32.
10. As a result of this injury by accident, plaintiff remained temporarily totally disabled through the date of the hearing before the Deputy Commissioner, and is in need of further medical and psychological treatment.
11. As a result of the compensable injury of April 9, 1990, defendants made payments at her compensation rate during the period April 10, 1990 — July 16, 1992. Defendants failed to submit a I.C. Form 21 agreement to pay compensation prior to terminating these payments, and failed to obtain the Commission's permission to stop payment of the temporary total disability benefits which they admitted were due in the I.C. Form 21 agreement for "necessary" weeks of compensation approved April 28, 1993.
* * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional:
CONCLUSIONS OF LAW
1. As a result of the injury by accident of April 9, 1990, plaintiff is entitled to temporary total disability benefits from April 10, 1990 through the date of the hearing before the Deputy Commissioner, and continuing during her total disability, until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. An employer's obligation to pay compensation may be discharged pursuant to an agreement approved by the Commission in accordance with the amount and time and manner of payment required by the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-17; 97-82. Defendants failed to submit to the Commission for approval an I.C. Form 21 agreement to pay compensation prior to terminating payments to plaintiff made in respect to the injury on July 16, 1992, and failed to obtain the Commission's permission to cease payment of temporary total disability benefits, in violation of N.C. Gen. Stat. § 97-82 (1991) and I.C. Rule 404, respectively. In its discretion, the Commission will approve said payments as compensation and allow credit for them, and impose the penalty for benefits due and unpaid pursuant to the I.C. Form 21 agreement for "necessary" weeks of compensation approved on April 28, 1993. N.C. Gen. Stat. §§ 97-82; 97-18(g); Hieb v. Howell's Child CareCenter, Inc., 123 N.C. App. 61, 472 S.E.2d 208 (1996); Raffield v.U.S. Air, Inc., I.C. No. 136625, 6 December 1994; Snead v.Carolina Pre-Cast Concrete, Inc., I.C. No. 283037, 30 December 1996.
3. Plaintiff is entitled to continuing medical compensation at defendants' expense including, but not limited to, physical therapy and psychological treatment. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall continue to pay plaintiff temporary total disability benefits at the rate of $90.71 per week from April 10, 1990 through the date of the hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission, with credit for payments to plaintiff prior to July 16, 1992, together with a penalty equal to 10% of all compensation due for more than 14 days when paid. Compensation which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical compensation expenses incurred as a result of this injury by accident, including the treatment recommended by Dr. Comer.
3. An attorney's fee in the amount of twenty-five percent (25%) of the compensation herein awarded is approved for plaintiff's counsel. Twenty-five percent (25%) of the award which has accrued shall be deducted and paid directly to plaintiff's counsel, and thereafter every fourth (4th) check due plaintiff shall be sent directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
JRW:md