The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr. and the briefs on appeal. Both parties waived oral argument before the Full Commission. The appealing party has not shown good ground to receive further evidence, rehear the parties or their representatives, or to amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. Parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and the defendant-employer.
3. The defendant is a duly self-insured.
4. Plaintiff's average weekly wage was $710.58.
5. The date of the alleged injury or alleged contraction of the occupational disease is on or about March, 1994.
6. Plaintiff's medical record consisting of 87 pages of medical documentation were stipulated into evidence as Stipulated Exhibit One.
7. Plaintiff's personnel file consisting of 129 pages were stipulated into evidence as Stipulated Exhibit Two.
8. A letter from the DART Program was stipulated into evidence as Stipulated Exhibit Three.
9. The issues before the Full Commission are as follows:
 (a) Whether plaintiff sustained a compensable injury by accident or contracted an occupational disease as a result of his employment with defendant.
 (b) If so, what compensation, if any, is due the plaintiff.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was employed by the defendant-employer as a police officer from 1987 until 1994. At the time plaintiff last worked for the defendant in March, 1994, plaintiff had an average weekly wage of $710.94.
2. Plaintiff graduated from Florida State University in 1982 with a degree in Criminology. Between the time of plaintiff's graduation in 1992 and his employment with defendant-employer, plaintiff was employed as a school bus operator, a janitor, and in security positions in hotels and a bank.
3. Plaintiff applied for employment with the Charlotte Police Department on approximately September 22, 1986. Plaintiff was subsequently employed and entered the Charlotte Police Academy on or about October 29, 1996 and graduated from the Charlotte Police Academy on or about March 11, 1987.
4. During plaintiff's first two years as a police officer, he served as a patrolman in the Adam One Team. Adam One patrolled the downtown district which is a relatively high crime area.
5. Plaintiff contends that a series of instances which he described as stressful contributed to his alleged contraction of an occupational disease.
6. On or about September 17, 1987, plaintiff encountered off-duty police officers who were apparently intoxicated and who were making threats to street persons or otherwise harassing individuals with an ax or hatchet.
7. Plaintiff reported the incident which resulted in at least one police officer being fired and others being reprimanded.
8. Plaintiff contends that as a result of reporting his fellow officers, he became the object of resentment and anger from his peers.
9. In approximately 1988, plaintiff was bitten by a suspect which caused him concern about contracting and infectious disease such as AIDS or Hepatitis.
10. On or about November 25, 1988, plaintiff was involved in an incident with a known felon who attempted to escape. Plaintiff hit the suspect with a flashlight. As a result of the conduct relating to this incident, plaintiff was reprimanded for using excessive force and suspended from the police department for twenty days.
11. From about 1989 until his termination from the police force in 1994, plaintiff was a member of Baker One Team. Baker One officers patrolled the suburbs or subdivisions of Charlotte including Belmont, Cherry, Elizabeth, Sedgefield, Myers Park, and Dilworth. The communities served by Baker One had relatively low crime rates.
12. As indicated by plaintiff's personnel file, plaintiff disobeyed defendant's rules and regulations on several occasions during his employment with defendant-employer.
13. By his own admission, plaintiff was at times arrogant, disrespectful, and disregarded the rules. As a result of these actions, including disregard of the rules and regulations, plaintiff received several probations and suspensions.
14. Plaintiff also received performance ratings from his supervisors that were less than acceptable.
15. Plaintiff was under the command of Captain M. C. Keith from about 1990 until plaintiff's termination in 1994. During this period, plaintiff was sometimes compliant and sometimes rebellious. There were ongoing disciplinary and performance problems relating to plaintiff's conduct. Captain Keith counseled plaintiff on several occasions concerning plaintiff's failure to follow the rules and regulations of the Charlotte Police Department.
16. Prior to his employment with defendant-employer, plaintiff usually consumed about a six-pack of beer per week. On occasion, plaintiff would become intoxicated. At the time of his application in September 1986, plaintiff indicated that he had last been intoxicated in 1985.
17. During the first five years of his employment with defendant-employer, plaintiff's consumption of alcohol remained relatively stable.
18. Beginning in 1992, plaintiff increased his alcohol consumption. This increase in alcohol consumption occurred on or about the same time that plaintiff realized that police work was not the correct career for him. During this time of increased alcohol consumption, plaintiff was working in Baker One which was the patrolling of relatively low crime areas.
19. Between the time plaintiff increased his alcohol consumption and the time of his final suspension, defendant had a full-time police chaplain, Dennis Whitaker. Plaintiff was aware of the police chaplain, and understood that the communications with the chaplain were confidential.
20. Beginning on or about February 25, 1991, an Employee Assistance Program was available to provide assistance to employees who had personal problems that adversely affected their work performance. The availability of the Employee Assistance Program was communicated to all police officers. Counseling by the Employee Assistance Program was confidential. Police officers were able to access the Employee Assistance Program without the knowledge of their supervisors.
21. Plaintiff never sought nor received any counseling from the police chaplain or the Employee Assistance Program despite the fact that he knew or should have known the availability of counseling from the police chaplain and the Employee Assistance Program.
22. Captain Keith never referred the plaintiff to the Employee Assistance Program and Captain Keith was unaware of plaintiff's problems with excessive drinking.
23. Plaintiff's final suspension occurred in late March 1994, and plaintiff was terminated by the defendant-employer on June 3, 1994.
24. Between April 1994 and November 1994, plaintiff worked as a self-employed landscaper and also held other part-time jobs.
25. Plaintiff earned more as a landscaper than he had earned as a police officer.
26. After plaintiff's termination by defendant-employer on June 3, 1994, plaintiff's alcohol consumption had another increase.
27. At the request of plaintiff's wife, he was involuntarily committed to the Center for Mental Health from October 28, 1994 until November 2, 1994 for treatment of his alcohol abuse.
28. On November 9, 1994, plaintiff attempted to pass another vehicle despite the presence of a double yellow line and was involved in a head-on collision. The driver of the other vehicle in the collision died as a result of the injury suffered in this accident. Plaintiff suffered severe injuries which prevented him from working for several months.
29. As a result of the criminal charges arising from the motor vehicle accident, plaintiff was imprisoned from March 1995 until May 1996.
30. Plaintiff was hospitalized at Carolina's Medical Center for several days following the accident of November 9, 1994. Psychiatric consultation report dated November 14, 1994 indicated that plaintiff admitted that he had an ETOH abuse problem. It also appeared that the plaintiff had a personality disorder which was categorized as antisocial behavior. Plaintiff's alcohol problem was suspected to be caused by a character pathology.
31. While imprisoned, plaintiff participated in the Drug-Alcohol Rehabilitation Treatment Program (DART) within the North Carolina Department of Corrections.
32. Following his discharge from prison in May 1996, plaintiff stayed home and cared for his two children for several months. Plaintiff did not seek employment during that time period.
33. From September 1996 until February 1997, plaintiff was a student at Central Piedmont Community College. During this time, he also worked part-time.
34. In February 1997, plaintiff was involved in an altercation with police officers from the Town of Matthews, North Carolina. Plaintiff failed to stop for a blue light and tried to avoid apprehension. A Matthews police officer shot plaintiff in the side and the bullet lodged in plaintiff's hip. Plaintiff was charged with five misdemeanors and sentenced to two weeks in jail.
35. There is insufficient medical evidence of record from which to determine by its greater weight that there is any causal connection between plaintiff's employment and his alcohol abuse and other alleged problems.
36. There is insufficient evidence of record from which to determine by its greater weight that plaintiff contracted an occupational disease which was caused by or related to plaintiff's employment with defendant-employer.
37. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with the defendant-employer placed plaintiff at an increased risk for acquiring or aggravating any condition as compared with the general public not so employed.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that he sustained an injury by accident arising out of or in the course of his employment with defendant-employer on or about March 1994. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that he developed any stress disorders, depression, or other emotional problems or alcohol-related problems due to causes and conditions which were characteristic of or peculiar to his particular employment as a police officer with the defendant-employer, but excluding all ordinary disease of life to which the public is equally exposed outside of the employment. N.C. Gen. Stat. § 97-53 (13). Cross v. Blue Cross/Blue Shield,104 N.C. App. 284, 409 S.E.2d 103 (1991).
2. Plaintiff's claim, therefore, is not compensable in the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. § 97-2(6) and § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and the same is, DENIED.
2. Each side shall bear its own costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER