The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Defendant-employer was an approved self-insured with Key Risk Management Services, Inc. acting as its administrator at all relevant times herein.
4. Plaintiffs average weekly wage was $596.15.
5. The date of plaintiffs alleged injury was December 13, 1996.
6. Plaintiff has received both short-term and disability retirement benefits from defendant-employer.
7. The issues to be determined by the Commission are as follows:
a) Whether plaintiff sustained an injury by accident or developed an occupational disease on or about December 13, 1996, while in the course and scope of employment with defendant-employer?
b) If so, what, if any, workers compensation benefits is plaintiff entitled to receive as a result of the injuries sustained?
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was fifty-seven years old at the time of the hearing before the Deputy Commissioner. Plaintiff holds a Masters Degree in Accounting and Business Administration.
2. Prior to his employment with defendant-employer, plaintiff had been employed as a vice president for business and finance at Barber Scotia College, as a general ledger accountant for Central Piedmont Community College, as an administration coordinator for Mecklenburg County Department of Employment and Training Division, as the chief accountant for Johnson C. Smith University, as an accountant for the Charlotte Area Fund, as an accountant for Opportunities Industrialization Center, as a comptroller for P. Piano and Sons, Inc., and as a postal worker.
3. Plaintiff started to work for defendant-employer in July 1995 as the personnel manager. In this position, plaintiff was responsible for all personnel matters of all the employees on site. This included insuring that all employees had the proper background checks and obtained the necessary training and education, advising employees on personnel matters, maintaining proper work records, and making sure that employees received benefits they were entitled to receive due to injury or other disabilities.
4. Plaintiffs direct supervisor was Harlan Frye. Mr. Frye worked in Raleigh in the Personnel Office. The schools director was Charles Newton. Mr. Newton was responsible for all school employees and students on the campus, including those, like plaintiff, who were not under his direct supervision.
5. On December 13, 1996 Mr. Newton met with an employee in a pre-dismissal conference. The employee wanted to tape record the conference. When Mr. Newton refused to agree for the conference to be recorded, the employee left to talk to plaintiff. The employee returned to Mr. Newtons office and informed Mr. Newton that plaintiff said the conference could be recorded. Mr. Newton contacted the Raleigh personel office and confirmed that the meeting could not be recorded unless both parties agreed.
6. After the conference, Mr. Newton burst into plaintiffs office and leaned across plaintiffs desk and told plaintiff that he was tired of plaintiffs interference with Mr. Newtons actions and decisions. Mr. Newton also told plaintiff that if he did not do his job, Mr. Newton would personally see to it that plaintiff would not work at Stonewall Jackson School. Plaintiff initially was not upset about the incident and joked about it with a coworker. Later, plaintiff became very concerned about losing his position and the effect the loss of employment would cause to him and his family.
7. Plaintiff testified that following this incident he was unable to sleep and became worried about his job security.
8. On January 7, 1997, plaintiff suffered a heart attack. At the hearing before the Deputy Commissioner, plaintiff claimed that his heart attack was caused by the incident on December 13, 1996 and the stress of working with Mr. Newton. On appeal to the Full Commission, plaintiff abandoned his claim based upon the heart attack and alleged that the work-related stress caused plaintiff to develop an occupational disease of major depressive disorder.
9. Following the heart attack, plaintiff returned to work at his job with defendant-employer, initially part-time and then full-time on March 17, 1997.
10. After plaintiff returned to work, he testified that Mr. Newton harassed him by contacting plaintiffs supervisors in Raleigh about his job performance, watching the times plaintiff arrived and departed from work, and criticizing plaintiffs job performance. Plaintiff was given an employee evaluation with a low satisfactory rating.
11. Based upon the testimony of Mr. Newton and other employees of defendant-employer, plaintiff failed to adequately perform his job. Mr. Frye indicated that plaintiff did not perform his job in a satisfactory manner the first year of employment, but that Mr. Frye gave plaintiff the benefit of the doubt and allowed him to continue in the position with the hope that plaintiff would improve to a satisfactory level with assistance. When staff needed information concerning an individual, they did not go to plaintiff, as was the protocol, but instead went to see his assistant, Ms. Alford. If staff members went to plaintiff to obtain necessary information, plaintiff often failed to provide it. Ms. Alford, however, always provided any necessary information to the staff without delay. Ms. Alford was plaintiffs assistant, who acted as interim personnel director prior to the hiring of plaintiff and also trained plaintiff after he was hired. Ms. Alford complained to Mr. Frye that she was performing all the work in the personnel office without any assistance from plaintiff.
12. Plaintiff last worked for defendant-employer on September 4, 1997. Since that time, he has received both short-term and long-term disability benefits due to his major depression.
13. Plaintiff received treatment for major depression from Dr. Jerry Jones, an internist, who in turn referred plaintiff to Dr. J. Meyers Powell, Jr., a psychiatrist. Psychiatrist Dr. Robert Rollins also evaluated plaintiff.
14. There is insufficient evidence of record from which to prove by the greater weight that any job-related stress plaintiff experienced in his job and which led to his depression was caused by the job duties themselves. Rather, the evidence showed that plaintiffs stress was caused by his inability to perform properly the job duties.
15. There is also insufficient medical evidence of record from which to prove by the greater weight that plaintiffs job subjected him to an increased risk of developing depression as compared to the general public not so employed.
16. Plaintiffs treating physicians were of the opinion that plaintiffs heart attack was the result of two blocked arteries. Plaintiffs heart attack was not causally related to his job and was not the result of an injury by accident arising out of and in the course of his employment with defendant.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on December 13, 1996 or on January 7, 1997. N.C. Gen. Stat. 97-2(6); Sandy v.Stackhouse, Inc., 258 N.C. 194, 128 S.E.2d 218 (1962).
2. Plaintiff has failed to prove that the work environment contributed to or was a significant causal factor in the development of his depression. Plaintiff has no disease and no disability related to causes and conditions which are characteristic of and peculiar to plaintiffs employment with defendant-employer. N.C. Gen. Stat. 97-53(13); Cross v.Blue Cross/Blue Shield, 104 N.C. App. 284, 409 S.E.2d 103 (1991).
3. Plaintiff is, therefore, not entitled to any compensation under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6); 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim for workers compensation benefits must be and is HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of September 2000.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/________________ RENÉE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER