The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modifications. Neither party requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured and Key Risk Management is the servicing agent.
4. A Form 22 and other information relating to plaintiffs employment were stipulated into evidence as Stipulated Exhibit 3.
5. The issues before the Commission are: (i) did plaintiff sustain an injury by accident arising out of and in the course of her employment with defendant-employer; (ii) whether plaintiff contracted an occupational disease as a result of her employment with defendant-employer; (iii) what is plaintiffs average weekly wage; (iv) if this is a compensable claim, what compensation, if any, is due plaintiff.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 35 years old. Plaintiff has a Bachelors and Masters Degree from the University of North Carolina at Charlotte.
2. Prior to working for defendant-employer, plaintiff held several other jobs.
3. Plaintiff began her work with defendant in the Waste Management Division of the Department of Environmental Health and Natural Resources in April 1995. Plaintiff was a waste management specialist whose work required her to travel and inspect businesses within an assigned geographic area to ensure compliance with applicable North Carolina laws and regulations.
4. Plaintiffs employment required her to be in industrial work sites that employed predominately male workers. Plaintiff testified at the hearing before the Deputy Commissioner that in 1996 and 1997 she experienced several on-the-job incidents that made her uncomfortable while inspecting various businesses. On one occasion, a man at a job site placed his hand on plaintiffs shoulder. Plaintiff reported the incident to her supervisor, Patti Arms, but decided not to pursue any further action relating to this incident. Ms. Arms was familiar with this individual and indicated to plaintiff that she did not feel that this was a malicious act on his part.
5. Plaintiff also testified at the hearing before the Deputy Commissioner that during her inspections she had witnessed a man urinating and a man reading a Playboy magazine. Plaintiff had no indications that these acts were directed toward her. Other than the touching incident, plaintiff did not report any of these incidents to her supervisor.
6. On June 17, 1997 plaintiff received an annual performance evaluation from her supervisor, Ms. Arms, for which she was given an overall rating of "Very Good. Plaintiff was given "Outstanding ratings in six areas, "Very Good ratings in seven areas and "Good ratings in two areas, negotiation and teambuilding, that had not previously been included in the evaluation. This evaluation is part of the personnel process for all employees of the State of North Carolina. The forms that were used and the procedures that were followed are pursuant to the North Carolina Personnel Act.
7. Plaintiff was upset about the evaluation because Ms. Arms stated that plaintiffs peers felt plaintiff was unapproachable. Ms. Arms, in part, based plaintiffs evaluation in the two new areas on discussions Ms. Arms had with third parties who Ms. Arms refused to identify to plaintiff. Plaintiff was outraged because she felt Ms. Arms discussion of plaintiffs job performance with her peers was unprofessional, inappropriate and unethical.
8. Because she was unhappy with the evaluation, plaintiff requested a meeting with Mike Kelly, Deputy Director of the Division of Waste Management, and Brenda Rivers, administrative assistant for the Division for budget personnel matters. The meeting was held in Raleigh on July 24, 1997, with plaintiff, Mr. Kelly, Ms. Arms, Ann Waddell and Brenda Rivers in attendance. Ms. Waddell was manager of employee relations for the department.
9. Plaintiff testified at the hearing before the Deputy Commissioner that during the meeting she was intimidated, attacked and reprimanded by Mr. Kelly and Ms. Arms. However, the greater weight of the evidence presented by the four others present at the meeting indicates that the discussion was a routine, problem-solving meeting in which everyone was treated courteously and with respect. Plaintiff was not verbally attacked, reprimanded or severely criticized. Nothing in this meeting was different from other meetings to discuss performance evaluations which are given upon request to any North Carolina state employee.
10. At the meeting plaintiffs supervisors encouraged plaintiff to be less adversarial in her dealings with the waste management industry in order to encourage voluntary compliance. Plaintiff was very proud that she wrote half of the notices of violation issued by the Division. While issuing notices of violation was part of plaintiffs job duties, the notices were only one of the tools used to reach the goal of compliance. Management wanted plaintiff to develop cooperative relationships and to establish rapport with the industry in order to facilitate compliance. Plaintiff, however, refused to acknowledge that any problem existed and was unwilling to change her behavior or to try to improve her working relationship and communications with her supervisor, Ms. Arms.
11. According to Mr. Kelly, the goals of the meeting were to allow plaintiff to voice her concerns and discuss her work plan and issues raised in the performance evaluation; to make clear to plaintiff that Ms. Arms was plaintiffs supervisor and that Mr. Kelly had confidence in Ms. Arms management skills; and to get Ms. Arms and plaintiff to commit to working together and to improving their communications with one another. When it became evident after two hours that plaintiff was unwilling to commit to improvement and no progress was being made, Mr. Kelly ended the meeting.
12. Following the meeting plaintiff picked up her laptop computer from Ron Thomas, the network administrator for the Division, and did not appear to be under stress or upset. Ms. Arms also had a brief conversation after the meeting with plaintiff and plaintiff did not appear upset.
13. While plaintiff was driving home from the evaluation, plaintiff became very agitated and disoriented and was unable to continue the drive. She called her boyfriend who drove to Siler City and transported her home. Plaintiff was unable to return to work after the meeting.
14. Plaintiff was initially treated for emotional distress by Dr. Yogesh Patel Dr. Patel indicated that no other events were significantly stressful to plaintiff other than the July 24, 1997 meeting.
15. Dr. Patel referred plaintiff to Dr. Anthony Patterson, a psychiatrist. Dr. Patterson was of the opinion plaintiffs problems were related to interpersonal relationships between plaintiff and her supervisors. Plaintiff has a panic disorder and major depression. Dr. Patterson noted that plaintiff has a narcissistic personality, which is found in individuals who strive for perfection and look for admiration from others. Individuals with narcissistic personalities tend to react poorly to any sort of criticism.
16. Dr. Patterson indicated that his opinions as to the causes of plaintiffs psychological problems were based upon plaintiffs subjective complaints. Dr. Patterson admitted that plaintiffs internal standard of reality after the July 24, 1997 meeting was altered and that this could affect the history plaintiff gave to Dr. Patterson.
17. Plaintiff described the July 24, 1997, meeting to Dr. Patterson as one in which she received a very unfavorable performance evaluation that was unfair to the point of a personal attack and that there was hostility and "outright meanness in the demeanor of management present. The greater weight of the evidence in this case does not support plaintiffs characterization of the meeting.
18. Plaintiff was also treated by Dr. Scott Lurie, who became plaintiffs treating psychiatrist. Dr. Lurie indicated that the stress in plaintiffs job was caused by the unpredictable working hours and writing citations. Plaintiff related the same version of the meeting on July 24, 1997, to Dr. Lurie as she gave to Dr. Patterson.
19. Both Dr. Lurie and Dr. Patterson causally related plaintiffs psychological conditions to her employment with defendant. These physicians also indicated that members of the general public are not equally exposed to the same stresses, causes and conditions that plaintiff experienced on July 24, 1997.
20. After reviewing the medical records, the testimony of all the witnesses and the depositions of the medical experts, the Commission gives greater weight to the opinions and testimony of Dr. Gerald Aronoff, the psychiatrist who performed the independent psychological examination of plaintiff at the request of the defendant, than to the opinions of Drs. Lurie and Patterson. Drs. Lurie and Patterson based their opinions concerning causation and increased risk on plaintiffs account of the meeting on July 24, 1997, which the Commission finds was not an accurate representation of what actually occurred at the meeting. The Commission gives greater weight to the testimony of Ms. Waddell, Ms. Rivers, Ms. Arms and Mr. Kelly, the four individuals present at the July 24, 1997 meeting, than to that of plaintiff.
21. The Commission finds that the greater weight of the competent, credible evidence of record shows that the events of July 24, 1997 did not constitute an unexpected, unusual or untoward occurrence, nor did the meeting constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. The meeting to discuss plaintiffs job performance evaluation was requested by plaintiff and was an ordinary incident of employment. Prior to the meeting, plaintiff knew who would be present at the meeting.
22. The greater weight of the evidence of record fails to show that plaintiffs job duties significantly contributed to or were a significant causal factor in the development of plaintiffs psychological condition. The evidence does show that the meeting of July 24, 1997 contributed to or was a significant causal factor in the development of plaintiffs psychological condition.
23. The greater weight of the medical evidence fails to show that plaintiffs job as a waste management specialist exposed her to an increased risk of developing anxiety disorder and depression than members of the general public not so employed.
24. Shortly after the hearing before the Deputy Commissioner, plaintiff returned to work for defendant on a part-time basis. However, plaintiff was unable to continue to work for defendant after April 6, 1999.
25. Plaintiffs average weekly wage was $676.33 yielding a compensation rate of $450.89.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer an injury by accident arising out of and in the course of her employment with defendant-employer on July 24, 1997. N.C. Gen. Stat. 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that she sustained a compensable occupational disease. Plaintiffs employment with defendant-employer did not place plaintiff at an increased risk of developing anxiety disorder and depression than members of the general public not so employed. N.C. Gen. Stat. 97-53(13); Crossv. Bluc Cross/Blue Shield, 104 N.C. App. 284, 409 S.E.2d 103 (1991).
3. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6); N.C. Gen. Stat. 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This ___ day of February, 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER