***********
Having reconsidered the evidence, the Full Commission reaches the same result as the Deputy Commissioner in finding that Plaintiff's claim is not compensable but modifies the findings of fact and conclusions of law.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the deputy commissioner hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The City of Asheville is self-insured for workers' compensation coverage and Hewitt Coleman and Associates is the third party administrator.
3. At the time of the Plaintiff's alleged injury, plaintiff was an "employee" of defendant-employer City of Asheville as that term is defined in the N.C. Workers' Compensation Act.
4. Plaintiff's wage may be determined from the Form 22 submitted to the Commission.
5. Plaintiff contends that the issues are as follows:
 (1) Whether the Plaintiff suffered a compensable emotional or psychological injury arising out of and in the course of his employment with the Defendant on May 18, 1998?
 (2) Whether the Plaintiff contracted a compensable emotional or psychological disorder as a result of his employment with the City of Asheville?
 (3) If so, what compensation benefits is Plaintiff entitled to receive as a result of his compensable disorder?
6. Defendant contends that the issues are as follows:
 (1) Did the Plaintiff sustain an injury or occupational disease as a result of his employment with the Defendants, and did he timely report that injury or occupational disease?
(2) If so, what compensation benefits is he entitled to receive?
7. Plaintiff alleges that the date of the cause of his injury is May 14, 1998. Plaintiff alleges that he is entitled to weekly compensation benefits from and after May 18, 1998 due to traumatic stress disorder. Plaintiff was placed on retirement status on December 1, 1998. Plaintiff is seeking weekly compensation benefits, which include: temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff is 52 years of age, having a date of birth of December 11, 1949. He completed high school. Plaintiff served in the Army from 1969-71, completing two tours of duty in Vietnam, with an honorable discharge in 1971. Plaintiff had combat duty, patrol duty and prisoner of war camp assignment while in Vietnam. While in Vietnam, plaintiff was exposed to violence and death.
2. Plaintiff began working for the Fire Department of the City of Asheville in 1973 and continued working there until he retired December 1, 1998. He received special training and was certified as an emergency medical technician (EMT). He was also trained in hazardous material inspecting, the use of a defibrillator, and the use of the water pumps. Prior to May 1998, Plaintiff had been trained and given the additional duty of driving the fire trucks. He had been driving the fire truck for about 20 years.
3. At the time that Plaintiff began driving fire trucks, around 1978, the position of fire truck driver was not a specific, designated position. Firefighters would share this duty, and there was no additional pay. Previously, the driver position had been a promotional position and firefighters were required to pass a test.
4. In the spring of 1998, there were 39 firefighters who were also assigned as drivers, of which five had been tested and promoted into the driver position. At that time, the City determined that the position of truck driver would be changed back to a separate promotional position. A firefighter would be required to pass a hands-on test to qualify as a driver. Plaintiff and all the other firefighters were notified of this change. Anyone who wished to drive the truck, including the existing drivers, would be required to take and pass the test in order to keep driving. The only exception was for the five drivers who had previously taken and successfully completed the driving test and had been promoted to the designated position.
5. In May 1998, 62 firefighters, including Plaintiff, took the test to qualify as drivers. Of those, 41 passed and 21 did not pass. Of the 21 who did not pass, 9, including Plaintiff, were already assigned drivers. As a result of the test, those who were assigned drivers who did not pass, would no longer be assigned to drive on a regular basis, but would work as relief drivers. There was no demotion involved, and there was no reduction in pay, but there was a change of duty assignment. All drivers who did not pass the test were given an opportunity to challenge the test results, which Plaintiff chose not to do.
6. Plaintiff has a long history of treatment for post-traumatic stress disorder (PTSD), caused by his combat experience in Vietnam. He has a ten percent service connected disability through the Veterans Administration related to his PTSD. Plaintiff showed signs of a stress disorder shortly after returning from Vietnam, when he had angry outbursts with his wife. As early as 1986, he reported to the V.A. Medical staff that he was having dreams about Vietnam. At that time, he was also having difficulties in his first marriage, problems with anger, and was expressing suicidal thoughts.
7. Plaintiff continued with his mental health treatment with the V.A. and by March 1995, he had been assessed with PTSD and depression of several years duration. He continued to have problems with anger management and had ongoing emotional difficulties. By January 1996, Plaintiff's wife had left him and he was reporting high levels of stress and anger.
8. At his February 15, 1996, visit to the V.A., Plaintiff reported that his mother had died about two weeks earlier. He was very depressed over this and his marital situation, and he expressed suicidal thoughts. Plaintiff continued to be seen at the V.A. throughout 1996 and 1997 with symptoms of depression and PTSD related to his service in Vietnam and his ongoing marital and family situation. He continued to have violent dreams set in Vietnam and expressed ongoing problems with anger. He was treated with the medications Zoloft and Paxil.
9. In December 1997, Plaintiff experienced an increase in his symptoms. In addition to his marital problems, his girlfriend was served with divorce papers. Plaintiff's son was demonstrating personality changes consistent with schizophrenia and was admitted to Broughton Hospital on December 23. By early January 1998, Plaintiff was admitting to homicidal thoughts about his girlfriend's ex-husband.
10. At the time he took the driver's test in May 1998, Plaintiff had many personal stressors in his life and an extensive history of mental health treatment for depression, PTSD, and anger management.
11. The position of firefighter may be considered inherently dangerous and exposes firefighters to many traumatic events not usually witnessed by the general public, such as a house fire where persons may be trapped inside or a serious vehicular accident. The evidence in this case, however, fails to show that such events were factors significantly contributing to Plaintiff's psychological problems, including PTSD, depression and anger.
12. After Plaintiff was notified that he did not pass the driver's test, Plaintiff became extremely angry. He called his employee assistance plan and was referred to Dr. Phillip Ellis, a psychologist in the Asheville area, who Plaintiff then saw on May 18 for crisis intervention. Plaintiff expressed his anger at not passing the test and viewed the situation as a demotion. He was particularly upset with the Fire Chief Gary Cornett.
13. Having reviewed and considered the testimony of Dr. Ellis, Dr. Hoogerman, and Dr. Payton, the Full Commission finds that Plaintiff's post-traumatic stress disorder (PTSD) resulted from his service during the Vietnam War and that his condition, combined with his personality type, led to extreme anger and potential violence when dealing with stresses of life such as marital, family, and relationship problems. He had a similar reaction to the driver's test and his relationship with the fire chief. To his credit, he recognized the potential for violence and sought help, initially with Dr. Ellis.
14. Although Plaintiff's PTSD was not aggravated or exacerbated by driver's test incident, that incident was the precipitating incident for the aroused and dangerous mental state with which Plaintiff presented to Dr. Ellis and subsequently sought further treatment. For this reason, the driver's test incident played a significant role in Plaintiff's mental health picture at that time, but that incident did not worsen the underlying psychological condition. Because of his PTSD and psychological problems, plaintiff had unusual difficulty accepting what he viewed as a job demotion.
15. Failing an employment test and perceiving demotion are not uncommon circumstances in the workplace. Such occurrences are not characteristic to employment as a firefighter, and employment as a firefighter does not increase one's risk of experiencing stress as a result of failing a test or perceiving demotion. Neither Plaintiff's PTSD nor his mental state in dealing with the driver's test or the chief were the result of any traumatic event or events characteristic of employment as a firefighter.
16. After May 1998, Plaintiff returned to light duty work. He painted fire hydrants for a while. Plaintiff continued working light duty until December 1, 1998, when, as the parties have stipulated, he went out of work on retirement status.
17. Plaintiff has not established that he has suffered an injury from an "accident." The test requirement, administering the test, test grading, and Plaintiff's performance on the test did not constitute an untoward or unexpected event. Plaintiff voluntarily took the test and knew that he would pass or fail. Consistent with legitimate personnel action, the City of Asheville, in its discretion, choose to reinstitute the process of requiring drivers to pass the test.
18. Plaintiff has not established that he has sustained an occupational disease. Although firefighting involves risks characteristic to that employment, those kinds of risks are were not the reason for plaintiff's claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. The Workers' Compensation Act was never intended to be a general accident and health insurance policy. Weaver v. Swedish ImportsMaintenance, 319 N.C. 243, 354 S.E.2d 477 (1987). Although workers' compensation is often the exclusive remedy for injuries, including occupational diseases, sustained in the course and scope of employment, workers' compensation is not a remedy for all injuries and is not the proper remedy for employment claims for risks which do not arise out of and in the course of employment. Compare N.C. Gen. Stat. § 97-10.1
(workers' compensation is exclusive remedy) with Busher v. Southern FoodService, 73 F. Supp.2d 556 (M.D.N.C. 1999) (claim for emotional distress arising from termination and denial of FMLA not precluded by Workers' Compensation Act); Harrison v. Edison Brothers Apparel Stores, Inc.,724 F. Supp. 1185 (M.D.N.C. 1989) (emotional damage claim based on acts not in the normal course of employment not precluded by Workers' Compensation Act); Hogan v. Forsyth Country Club, 79 N.C. App. 482,340 S.E.2d 116, disc. review denied, 317 N.C. 334, 346 S.E.2d 140 (1986) (Act does not preclude action for civil wrongs which are outside the scope of the Act). The Commission makes no finding as to whether the plaintiff has any valid employment claims which are outside the Workers' Compensation Act and acknowledges that its opinion concerning the validity of the claims is immaterial. See Abels v. Renfro Corp.,108 N.C. App. 135, 423 S.E.2d 479 (1992) (Commission's findings concerning compensability of injury irrelevant to § 97-6.1 claim).
2. Plaintiff has not proven by the greater weight of the evidence that he suffered an injury by accident arising out of and in the course of his employment with Defendant on or about May 14, 1998, which caused his post-traumatic stress disorder, his depression or other emotional or psychological condition. G.S. § 97-2(6). The term "accident" refers to an unlooked for or untoward event which was not expected or designed by the employee. See Poe v. Acme Builders, 69 N.C. App. 147,316 S.E.2d 338, cert. denied, 311 N.C. 762, 321 S.E.2d 143 (1984). An injury that occurs under normal workplace conditions is not an accident.Id.
3. Plaintiff has not proven by the greater weight of the evidence that his post-traumatic stress disorder, his depression or other psychological condition developed, was aggravated or exacerbated by causes and conditions which are characteristic of and peculiar to his employment with Defendant but excluding all ordinary diseases of life to which the general public is equally exposed, such that he would be entitled to compensation for an occupational disease. G.S. § 97-53(13). Bookerv. Duke Medical Center, 297 N.C. 458 (1979). Personnel actions, including taking of performance examinations, being passed over for promotions, failure to receive a raise, and demotions, among other events, are experiences common to many if not all employees at some time in their work history; thus, the change in one's psyche as a consequence of these circumstances is not unique to plaintiff's employment and is not compensable as an occupational disease. See Woody v. ThomasvilleUpholstery, 146 N.C. App. 187, 552 S.E.2d 202 (2001) (Martin, J, concurred in part and dissented in part), reversed, 355 N.C. 483, 562 S.E.2d 422
(2002) (per curiam) (adopting Judge Martin's dissent); G.S. §97-53(13).
4. Plaintiff has not proven by the greater weight of the evidence that his post-traumatic stress disorder, his depression or other pre-existing psychological conditions, were significantly aggravated by an accident or other event at work to the point that his condition became disabling.Cross v. Blue Cross/Blue Shield, 104 N.C. App. 284, 409 S.E.2d 103
(1991).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Under the law, Plaintiff's claim must be and is hereby denied.
2. Each side shall pay their own costs, except that Defendants shall pay the expert witness fees previously assessed.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
RCR/gas