BOBBY BRITT, Employee, Plaintiff v. GATOR WOOD, INC., Employer, FIREMAN'S FUND INSURANCE COMPANY, Carrier, Defendants

No. COA06-1398

(Filed 4 September 2007)

## 1. Workers' Compensation— disability—date established— sufficiency of evidence

The evidence before the Industrial Commission in a workers' compensation case was sufficient to support a finding of total disability as of June 1 where there was medical evidence that established total disability as of 17 June, and testimony from plaintiff permitting the inference that his condition on 1 June was physically the same.

## 2. Workers' Compensation— disability—economic downturn

The Industrial Commission's award of temporary total disability in a workers' compensation case was upheld where defendants contended that the loss of wage earning capacity was due to an economic downturn. Plaintiff here presented medical evidence showing an impairment of his earning capacity, and the burden shifted to defendants to show that there were suitable jobs that plaintiff could obtain.

## 3. Workers' Compensation— disability—medical proof

A workers' compensation disability award was remanded for further findings where plaintiff did not present medical evidence

that he was incapable of work in any employment during the relevant period. A Form 60 does not give rise to a presumption of continuing disability. However, the absence of medical proof of disability does not preclude proof of disability under one of the other tests.

### 4. Workers' Compensation— disability—evidence

A workers' compensation award of temporary partial disability was upheld where plaintiff presented evidence that he obtained employment at lower wages, there was agreement among the doctors that he had permanent restrictions on the type of work he could do, and defendants presented no evidence of how he could have obtained employment at higher earnings (although they challenged the sincerity of his job search and argued about his background).

Appeal by defendants from opinion and award entered 16 June 2006 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 May 2007.

*Robert A. Lauver for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Jeffrey A. Doyle and Dana C. Moody, for defendants-appellants.*

GEER, Judge.

Defendants Gator Wood, Inc. and Fireman's Fund Insurance Company appeal from an opinion and award of the North Carolina Industrial Commission awarding disability and medical compensation to plaintiff Bobby Britt. Because the Commission's findings of fact are supported by competent evidence with respect to the award of temporary total disability compensation for the period of 1 June 2002 through 16 June 2002 and for temporary partial disability after 6 February 2003, we uphold the awards for those time periods. With respect, however, to the award of temporary total disability compensation for the period of 13 January 2003 through 7 February 2003, we must remand for further factual findings under *Russell v. Lowes Prod. Distribution,* 108 N.C. App. 762, 425 S.E.2d 454 (1993).

### Facts

Plaintiff was hired in April 1999 by defendant-employer as a timber buyer. In this position, plaintiff scouted properties, walked the land to demarcate areas for logging, measured trees, negotiated

prices, and performed title searches. Because defendant-employer had lost a major contract, plaintiff was notified in April 2002 that he would be laid off, with his last day of work being 31 May 2002.

On 1 May 2002, plaintiff sustained an admittedly compensable injury by accident while working on a tract where defendant-employer was conducting logging operations. Plaintiff stepped on a log, lost his footing, and fell in an awkward, twisting manner. He landed hard with his right knee directly striking the log. Despite the injury and even though the knee ached, plaintiff continued to work. He did not seek immediate medical treatment, as he hoped the pain would resolve itself.

After a week had passed, during which the swelling and pain in the injured knee continued, plaintiff saw Dr. Edward F. Hill. Dr. Hill diagnosed plaintiff's condition as a mild knee strain. Over the following weeks, the pain in plaintiff's knee became progressively worse, such that, by 31 May 2002, he was physically incapable of performing the regular duties of his job as a timber buyer. Plaintiff testified: "[T]he pain was just getting increasingly worse. It was harder to walk. Crawling was not an option. The more time on the leg, the more pain and the swelling."

On 5 June 2002, plaintiff returned to Dr. Hill with continued knee pain and was referred to Dr. Scott Hannum, an orthopedist. After seeing plaintiff on 17 June 2002, Dr. Hannum ordered an MRI. The MRI suggested that plaintiff had a torn medial meniscus. On 10 July 2002, Dr. Hannum wrote plaintiff out of work, and a month later, on 13 August 2002, plaintiff underwent recommended knee surgery. Following the surgery, defendants accepted the compensability of the injury in a Form 60, but specified that disability did not begin until the date of the surgery.

Plaintiff continued to have follow-up visits with Dr. Hannum, and on 2 December 2002, Dr. Hannum concluded that plaintiff had reached maximum medical improvement. He assigned a 7% permanent partial disability rating to plaintiff's right knee and released plaintiff to work without restrictions. In his deposition, Dr. Hannum stated that plaintiff could have returned to his previous occupation as a timber buyer had there been a position available, but acknowledged that such work would have given plaintiff a "hard time" and that plaintiff would need to be especially cautious with respect to his knee. According to Dr. Hannum, even after recovery, plaintiff's knee

injury placed him at risk of developing post-traumatic arthritis and of requiring further knee surgery in the future.

Plaintiff obtained opinions from two additional orthopedists—Dr. Gilbert Whitmer and Dr. Kevin Speer—regarding his disability rating. Both Dr. Whitmer and Dr. Speer assigned a 12% permanent partial disability rating to plaintiff's right knee. They recommended that plaintiff's activities be restricted, including no lifting or carrying over 30 pounds and no excessive squatting, kneeling, crawling, and stair or ladder climbing. Dr. Hannum ultimately agreed that the disability ratings and activity restrictions of the other two orthopedists were "reasonable."

Plaintiff remained out of work from 1 June 2002 through 6 February 2003. On 7 February 2003, plaintiff obtained employment in a different line of work and at lower wages than he had previously earned as a timber buyer.

When the parties were unable to reach an agreement regarding the extent of the benefits to which plaintiff was entitled, plaintiff requested a hearing before the Industrial Commission. Deputy Commissioner J. Brad Donovan entered an opinion and award on 6 June 2005 that awarded plaintiff temporary total disability compensation for the period 17 June 2002 through 12 January 2003 and permanent partial disability compensation for an additional 24 weeks.

Plaintiff appealed to the Full Commission, which modified the deputy commissioner's decision in an opinion and award filed on 16 June 2006. The Commission determined that plaintiff was entitled to: (1) temporary total disability beginning on 1 June 2002 and continuing through 7 February 2003; (2) temporary partial disability beginning on 7 February 2003 and continuing for the remainder of 300 weeks from the date of injury; and (3) compensation for "medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability," including compensation to address any post-traumatic arthritis that plaintiff might develop or any future knee surgery that he might require. Defendants timely appealed to this Court.

## Discussion

Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the con-

clusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). This Court reviews the Commission's conclusions of law de novo. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

Defendants do not dispute the award of benefits for the period 17 June 2002 through 12 January 2003. Defendants contend, however, that the Commission erred in awarding (1) temporary total disability benefits for the periods 1 June 2002 through 16 June 2002 and 13 January 2003 through 7 February 2003; and (2) temporary partial disability benefits beginning 7 February 2003.[1]

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). In order to support a conclusion of compensable disability, the Commission must find:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). There are four methods by which a plaintiff may prove disability:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related·injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has ob-

---

1. Defendants report in their brief that they have paid plaintiff temporary total disability benefits from 17 June 2002 through 12 January 2003.

tained other employment at a wage less than that earned prior to the injury.

*Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457 (internal citations omitted).

[1] With respect to the period of 1 June 2002 through 16 June 2002, defendants first contend that there was no competent evidence of plaintiff's disability. Defendants do not, however, dispute that plaintiff was totally disabled due to his compensable accident as of 17 June 2002, the date he was first examined by Dr. Hannum. Following the MRI, "the results of which suggested a torn medial meniscus," Dr. Hannum wrote plaintiff out of work due to his knee condition. The evidence from Dr. Hannum meets the requirements of the first method of proof set forth in *Russell.*

As for the two weeks before plaintiff's visit with Dr. Hannum, defendants contend that since plaintiff had not yet been written out of work or assigned any work restrictions, he has not proven that he was disabled. The Commission could, however, reasonably draw the inference that plaintiff's condition on 1 June 2002 was the same as his condition a mere two weeks later on 17 June 2002—the date by which defendants agree plaintiff had become totally disabled.

On 1 June 2002, plaintiff was suffering from the torn medial meniscus resulting from his fall on 1 May 2002, and he testified to his steadily progressing pain. That condition had simply not yet been diagnosed. By 31 May 2002—several weeks after the accident—plaintiff's condition had gotten "increasingly worse" such that "[i]t was harder to walk" and "[t]he more time on the leg, the more pain and the swelling." *See Perkins v. Broughton Hosp.*, 71 N.C. App. 275, 279, 321 S.E.2d 495, 497 (1984) ("The ordinary person knows, without having to consult a medical expert, when it is necessary to lie down and rest because his or her own body is tired, exhausted, or in pain, and the law has no inhibition against testimony to that effect. The credibility and weight of plaintiff's testimony was for the Commission to decide, not us.").

In short, the Commission had before it medical evidence that established, under the first prong of *Russell*, that plaintiff was totally disabled as of 17 June 2002, as well as plaintiff's testimony permitting the inference that plaintiff's condition as of 1 June 2002 was physically the same as on 17 June 2002. This combination of evidence is sufficient to support the Commission's finding of total temporary disability as of 1 June 2002.

**[2]** Defendants, however, alternatively argue that because plaintiff was laid off on 31 May 2002, "the evidence of record shows that [p]laintiff's loss of wage earning capacity . . . was not the result of his injury by accident but instead was due to an economic downturn." Defendants have focused on the wrong issue. While the immediate cause of the loss of plaintiff's wages as of 1 June 2002 may have been the lay-off, that fact does not preclude a finding of disability. As *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986) explained, "an injured employee's earning capacity" is determined "by the employee's own ability to compete in the labor market." Thus, the fact that plaintiff was laid off does not preclude a finding of total disability if, because of plaintiff's injury, he was incapable of obtaining a job in the competitive labor market.

A plaintiff meets the burden of proving that incapacity by offering evidence consistent with one of the methods of proof set forth in *Russell.* Because plaintiff presented medical evidence showing an impairment of his earning capacity under the first prong of *Russell,* the burden shifted to defendants to show that there were suitable jobs that plaintiff was capable of obtaining during the first two weeks in June 2002. *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) ("If the claimant presents substantial evidence that he is incapable of earning wages, the employer has the burden of producing evidence to rebut the claimant's evidence. This requires the employer to 'come forward with evidence to show not only that suitable jobs are available, *but also that the plaintiff is capable of getting one,* taking into account both physical and vocational limitations.' " (quoting *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990))). As defendants have made no attempt to demonstrate that they met their burden, we uphold the Commission's award of temporary total disability compensation for the period of 1 June 2002 to 16 June 2002.

**[3]** With respect to the period of 13 January 2003 to 7 February 2003, defendants assert that plaintiff failed to prove total disability because Dr. Hannum released plaintiff to return to work without restrictions in December 2002. In response, plaintiff contends that he was entitled to a presumption of ongoing disability despite having received a doctor's release to work.

A presumption of disability only applies, however, when (1) there has been an executed Form 21 or Form 26, or (2) there has been a prior disability award from the Industrial Commission. *Clark v. Wal-*

*Mart*, 360 N.C. 41, 44, 619 S.E.2d 491, 493 (2005). Neither of these conditions is satisfied in this case. A Form 60 does not give rise to a presumption of continuing disability. *Id.* at 44-45, 619 S.E.2d at 493-94. As such, plaintiff was not relieved of his burden of proving disability for the period of 13 January 2003 to 7 February 2003 under one of the *Russell* methods.

Plaintiff has not met the requirements of the first method of proof under *Russell* since he presented no medical evidence that he was incapable of work *in any employment* during the period of 13 January 2003 to 7 February 2003. In fact, Dr. Hannum released plaintiff to return to work in December 2002. Thus, the Commission's finding of total disability for the period of 13 January 2003 to 7 February 2003 cannot be premised upon the first *Russell* method.

The absence of medical proof of total disability, however, "does not preclude a finding of disability under one of the other three [*Russell*] tests." *White v. Weyerhaeuser Co.*, 167 N.C. App. 658, 672, 606 S.E.2d 389, 399 (2005). Where, as here, the findings show that "plaintiff, although limited in the work he can perform, is capable of performing some work," and there is evidence that plaintiff may have satisfied *Russell* methods two or three, the Commission must make findings addressing those two methods of proof. *Workman v. Rutherford Elec. Membership Corp.*, 170 N.C. App. 481, 490, 613 S.E.2d 243, 250 (2005). We must, therefore, remand to the Commission to make findings regarding plaintiff's disability, under *Russell* methods two and three, for the period of 13 January 2003 to 7 February 2003. *See id.* at 491, 613 S.E.2d at 250 ("We remand to the Commission to make findings of fact, based on competent evidence, to determine whether plaintiff is totally disabled.").

[4] Finally, defendants assert that plaintiff failed to establish the existence of ongoing disability following his return to work on 7 February 2003 sufficient to entitle him to an award of temporary partial disability benefits. When, however, a worker presents evidence that satisfies the fourth prong of *Russell*—"that he has obtained other employment at a wage less than that earned prior to the injury," 108 N.C. App. at 765, 425 S.E.2d at 457—"[s]uch evidence, while not dispositive of disability, shifts the burden to the employer to establish that the employee could have obtained higher earnings." *Larramore v. Richardson Sports, Ltd. Partners*, 141 N.C. App. 250, 259-60, 540 S.E.2d 768, 773 (2000), *aff'd per curiam*, 353 N.C. 520, 546 S.E.2d 87 (2001).

## BRITT v. GATOR WOOD, INC.

[185 N.C. App. 677 (2007)]

Here, plaintiff presented evidence that he obtained other employment on 7 February 2003 at lower wages than he had previously earned, as well as evidence showing agreement among all the doctors that he had permanent restrictions on the type of work he could perform. Consequently, the burden shifted to defendants to show that plaintiff could obtain a higher-paying job.

Although defendants challenge the sincerity of plaintiff's job search and make various arguments regarding plaintiff's educational and vocational background, they presented no evidence to the Commission to show that plaintiff could, in fact, have obtained employment at higher earnings. *See Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 131, 532 S.E.2d 583, 588 (2000) ("Competent evidence indicates that plaintiff at bar met his burden under [*Russell* method (4)] . . . by showing his earnings through his employment with Direct Transport, Inc. These earnings, likewise, were competent evidence of plaintiff's earning capacity. Defendant presented no evidence that plaintiff could obtain employment earning more than this amount.").

Accordingly, the Commission could properly determine that plaintiff's reduced wages were a manifestation of his disability and, further, that this diminished earning capacity entitled him to temporary partial disability benefits. *See Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 354, 581 S.E.2d 778, 787 (2003) ("Commission's finding that plaintiff had demonstrated a reduced wage earning capacity under the fourth option . . . was a proper basis for the Commission to award plaintiff partial disability benefits."). The award of temporary partial disability is, therefore, also upheld.

Affirmed in part; remanded in part.

Judges HUNTER and ELMORE concur.