***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of the law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. An employer-employee relationship existed between plaintiff and GMAC (hereinafter defendant) on July 13, 2005, the date of the subject injury by accident.
5. Plaintiff suffered an admitted injury by accident on July 13, 2005 which arose out of and in the course of her employment with GMAC.
6. Plaintiff's average weekly wage and compensation rate for the subject injury by accident are $479.00 and $319.33, respectively.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-nine (49) years old. She is a high school graduate who went on to receive certificates from cosmetology and beauty school. She also received a certificate as a pharmacy technician and worked for a number of years as a certified transcriber.
2. Plaintiff started working for defendant as a Customer Service Consultant in May of 2004. Her job as Customer Service Consultant required her to talk on the telephone and answer questions from clients and insurance agents about underwriting, billing and insurance *Page 3 
quotes. The position also required her to work on a computer for the majority of her shift.
3. On July 13, 2005, defendant was holding an employee-appreciation luncheon. As part of the luncheon, various food vendors were set up outside to serve food items to employees. While attending the luncheon, plaintiff was struck in the middle of her forehead by the end of a hollow pole which was used to hold up a tent that housed a vendor serving funnel cake. There is no evidence of what the pole was made of and how much it weighed. Plaintiff did not lose consciousness when the pole struck her. No part of the pole struck plaintiff in her left eye. As a result of the pole striking her in the head, a bump the size of a dime developed on plaintiff's forehead.
4. After the accident, plaintiff went back to her desk and spoke with Lisa Mitchell, Leave Administrator for defendant. Plaintiff was capable of walking without assistance after the incident and was coherent. She reported to Ms. Mitchell that her head was hurting and that her vision was blurry. Ms. Mitchell did not notice plaintiff's left eye watering and her left eye did not look any different than her right eye. Given the nature of plaintiff's complaints, Ms. Mitchell advised plaintiff that she would have to either arrange for a family member to drive her to the hospital or an ambulance would carry her. Plaintiff elected to be transported by ambulance.
5. At the emergency room, a CT scan without contrast was negative for hemorrhage, fracture or subluxation. Although plaintiff complained of blurriness in her left eye, a visual acuity test revealed that she had 20/20 vision in both eyes. Clinical impression was "minor closed head injury" with "contusion to the head." Plaintiff was discharged in stable condition, advised to not work for two (2) days and to follow up with an ophthalmologist.
6. On July 18, 2005, plaintiff presented to her family physician, Dr. Alvin Lue with Primecare, complaining of pain and blurriness in her left eye, as well as tenderness over her left *Page 4 
forehead. Dr. Lue referred plaintiff to an ophthalmologist and neurologist.
7. On July 18, 2005, after presenting to Dr. Lue, plaintiff presented to ophthalmologist, Dr. James Branch. Dr. Branch suspected cyclitis and prescribed medication. Plaintiff presented to Dr. Branch on August 1, 16 and 30, 2005 for follow up during which time he prescribed two (2) different types of medication for plaintiff's eye condition. During the visits on August 16 and 30, 2005, Dr. Branch noted that plaintiff was not using the medication as directed. On August 30, 2005, plaintiff reported to Dr. Branch that she did not want to use any medication, and he discharged plaintiff at that time with resolved eye pain. In addition, plaintiff became upset when Dr. Branch would not write her out of work for more than just one day.
8. On July 25, 2005, plaintiff presented to neurologist, Dr. Travis Jackson with Triad Neurological Associates, who ordered further diagnostic tests. An EEG was read by Dr. Jackson as "essentially normal with some intermittent slowing which may have been related to drowsiness but may also be indicative of her recent concussion." A visual evoked response test was normal with no evidence of optic neuropathy.
9. On July 29, 2005, plaintiff returned to Dr. Lue complaining of amnesia of past and recent events. Dr. Jackson referred plaintiff to neuropsychologist, Dr. Catherine Clodfelter, and a neuropsychological evaluation was completed on September 26, 2005. Dr. Clodfelter noted, "There were some indicators that [plaintiff] may not have put forth consistent sufficient effort on these testing tasks. Therefore, these results may somewhat under-represent her true level of cognitive ability." Dr. Clodfelter concluded, "I find it very difficult to say that this patient has significant cognitive deficits, when her worst memory score was only borderline. Also, there were questions about her consistent effort." Dr. Clodfelter recommended that plaintiff attempt to transition back to full-time work on a limited schedule until her confidence *Page 5 
and stamina increase. While Dr. Clodfelter pointed out that it may take longer for plaintiff to fully recover from her concussion than she may expect, she had "every confidence that [plaintiff] will continue to improve over the coming months and regain her previous level of functioning." On October 6, 2005, upon review of Dr. Clodfelter's report, Dr. Jackson advised that he did not believe any additional neurological testing was necessary and released plaintiff from his care.
10. On October 12, 2005, Dr. Lue released plaintiff to return to work for twenty (20) hours per week or four (4) hours per day. Subsequently, plaintiff returned to work for defendant for two (2) days in October, 2005. Plaintiff testified that she was unable to continue to work because looking at her computer caused her head and left eye to hurt and made her left eye water. Plaintiff testified that she worked with these symptoms for two days. She later returned to Dr. Lue on October 24, 2005 complaining that when she returned to work she developed left eye pain, blurred vision and watering. Dr. Lue wrote plaintiff out of work until she was further evaluated by an ophthalmologist.
11. On October 26, 2005, plaintiff presented to Temas Eye Center complaining of blurry vision, pain and sensitivity to light in her left eye, as well as headaches on the left side of her head. The medical record from this visit indicate that the impression was eye pain of an unclear etiology and possibly dry eyes. No work restrictions were provided by Temas Eye Center.
12. On October 31, 2005, Dr. Lue noted that plaintiff did not want to go back to work due to medication and anxiety of her headaches returning; however, Dr. Lue released plaintiff to return to work two (2) hours per day. On November 2, 2005, Dr. Lue noted, "Patient now says she has [headaches] everyday [and, therefore,] can not go to work." Dr. Lue recommended a second opinion from a neurologist. On November 9, 2005, plaintiff reported to Dr. Lue that she *Page 6 
was dizzy and unable to go to work. Later that same day, plaintiff presented to the emergency room at Forsyth Medical Center complaining of dizziness and headaches. The medical records indicate, "No preceding symptoms, blurred vision, photophobia. . . ." Plaintiff was discharged the same day and advised to rest.
13. Plaintiff presented to Dr. Carlo Yuson, neurologist, on November 16, 2005. Dr. Yuson stated that he did not see any evidence of neurological abnormality. He was concerned about plaintiff's high blood pressure and advised that this may be contributing to the development of her headaches. Plaintiff has a history of uncontrolled high blood pressure dating back to at least 1999. She had a history of not taking her blood pressure medication as prescribed and in October, 2004 asked to be written out of work so she could get her blood pressure under control.
14. On November 29, 2005, plaintiff returned to Dr. Yuson and he noted that plaintiff's family doctor increased her blood pressure medication, and she was doing much better. Dr. Yuson reported that when plaintiff's blood pressure was under good control her headaches are much better. He further noted that while plaintiff still gets a few headaches, they coincide with her rise in blood pressure. Dr. Yuson opined that plaintiff was "on the mend and I believe that she will be expected to be at maximum medical improvement in January 2, 2006. At that point, she is released to full time duty."
15. Plaintiff's employment with defendant was terminated in November, 2005 due to company policy and for reasons unrelated to the subject workers' compensation claim. Plaintiff failed to produce any competent evidence that she made reasonable efforts to look for work immediately after January 2, 2006. The Full Commission gives considerable weight to plaintiff's responses to defendant's First Set of Interrogatories and finds that she did not begin *Page 7 
looking for work until the end of September of 2006. Plaintiff's lack of disability after her release by Dr. Yuson is further evidenced by the fact that immediately after applying for work, she located employment as a Purchasing Specialist with Hanes Brands through a temporary agency in September, 2006 earning her pre-injury average weekly wage.
16. A Form 60 was filed with the Industrial Commission on or about October 13, 2005 and temporary total disability benefits were initiated by defendant. Defendant terminated payment of temporary total disability benefits in January of 2006. When defendant stopped payment of benefits, plaintiff had not returned to work. Defendant did not file a Form 24 and obtained Industrial Commission approval prior to terminating payment of temporary total disability benefits.
17. There is no executed Form 21 or Form 26 in this case. Further, there was no award of disability from the Industrial Commission which existed prior to the hearing before the Deputy Commissioner.
18. Based on the aforementioned findings, the Full Commission finds that plaintiff failed to prove by the greater weight of the evidence that she has had any loss of earning capacity as a result of the accident on July 13, 2005 since January 2, 2006. Rather, the greater weight of the competent and credible evidence of record reveals that plaintiff has not been disabled to any extent since January 2, 2006 as a result of the subject accident on July 13, 2005.
19. The Full Commission further finds that plaintiff reached maximum medical improvement on January 2, 2006 for the temporary injuries she sustained as a result of the accident on July 13, 2005. There is no medical evidence to suggest that plaintiff requires additional medical treatment for any injuries she sustained as a result of the subject accident. Plaintiff has had no work restrictions as a result of the accident since January 2, 2006. Further, *Page 8 
there is no medical evidence of record that plaintiff suffers from any permanent injury to her brain, eye or any other body part as a result of said accident.
20. The Full Commission further finds that plaintiff's testimony regarding her present complaints of headaches and pain in her left eye, as well as excessive watering and light sensitivity is not credible. Although plaintiff testified that her symptoms are severe and affect her significantly everyday, she has not requested nor sought medical treatment for her alleged symptoms since she was last seen by Dr. Yuson on November 29, 2005. In the event that any additional treatment was denied by defendant, plaintiff could have received treatment under her husband's health insurance policy. Further, plaintiff's failure to acknowledge her history of not taking medication as prescribed for both her high blood pressure and eye condition further bolsters the Full Commission's finding regarding plaintiff's lack of credibility.
21. Upon viewing plaintiff at the hearing, the Full Commission further finds that plaintiff does not suffer from any serious facial disfigurement as a result of the subject accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On July 13, 2005, plaintiff was involved in an injury by accident which arose out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2.
2. On January 2, 2006, plaintiff reached maximum medical improvement for the injuries she sustained as a result of the work-related accident.
3. The Form 60 which was filed on or about October 13, 2005 does not create a presumption of disability in favor of plaintiff. Brit v. GatorWood, Inc., 185 N.C.App. 677, *Page 9 648 S.E.2d 917 (2007). Accordingly, plaintiff bears the burden of proving disability by one of the following methods: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454,457 (1993).
4. Plaintiff has had no disability, either total or partial, since January 2, 2006 which is related to the work-related accident. N.C. Gen. Stat. §§ 97-2(9), 97-29, 97-30.
5. There were no temporary total disability benefits due and payable to plaintiff after January 2, 2006. Accordingly, defendants are not subject to a 10% penalty for late payment of compensation after temporary total disability benefits were terminated without Industrial Commission approval in January of 2006. N.C. Gen. Stat. § 97-18(g).
6. Plaintiff suffered no permanent injury or disfigurement as a result of the work-related accident. N.C. Gen. Stat. § 97-31.
7. Plaintiff does not need and is not entitled to any additional medical treatment for injuries resulting from the accident of July 13, 2005. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 10 
 AWARD
1. Plaintiff's claim that she is entitled to temporary total and/or temporary partial disability compensation as a result of the work-related accident on July 13, 2005 is DENIED.
2. Plaintiff's claim that she is entitled permanent partial disability compensation and/or disfigurement as a result of the work-related accident on July 13, 2005 is DENIED.
3. Plaintiff's claim that defendants are subject to a 10% penalty for late payment of temporary total disability benefits is DENIED.
4. Plaintiff's claim that she is entitled to additional medical treatment is DENIED.
5. Each side shall bear its own costs.
This the 30th day of July 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
DISSENTING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 11