***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. Plaintiff has shown good grounds to amend the record, reconsider the evidence, and amend the prior Opinion and Award. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Donovan.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff sustained a compensable injury to his lower back on April 24, 2008.
4. On April 24, 2008, Plaintiff was employed by Southern Fabricators, Inc.
5. The parties were subject to the North Carolina Workers' Compensation Act on April 24, 2008.
6. Stonewood Insurance Company provided workers' compensation coverage for Southern Fabricators, Inc. on April 24, 2008.
7. The parties stipulate that Plaintiff's average weekly wage was $550.00 and his compensation rate was $366.69.
8. Stonewood Insurance Company paid temporary total disability benefits to Plaintiff from June 17, 2008 through July 20, 2008 in the amount of $1,781.04 and from November 24, 2008 through February 24, 2009 in the amount of $4,871.73.
9. On July 7, 2009, Defendants provided Plaintiff with an Industrial Commission Form 26A, which Plaintiff has declined to execute.
 *********** ISSUES
1. Whether Plaintiff is required to elect to receive payment of his impairment rating pursuant to N.C. Gen. Stat. § 97-31?
2. To what, if any, benefits is Plaintiff entitled under the North Carolina Workers' Compensation Act?
3. Are Defendants entitled to a credit pursuant to N.C. Gen. Stat. § 97-42.1?
4. Are Defendants entitled to attorneys' fees under N.C. Gen. Stat. § 97-88.1? *Page 3 
5. Whether Plaintiff is entitled to reinstatement of temporary total disability benefits beginning on March 5, 2009 and continuing?
6. Whether the work furnished to Plaintiff by Defendants between February 25, 2009 and March 5, 2009 constituted suitable employment?
 *********** EXHIBITS
The parties stipulated the following documentary evidence:
 • Stipulated Exhibit #1: Medical records, pharmacy records, I.C. Forms, recorded statement, discovery responses, personnel records, Employment Security Commission records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 39 years old. He was employed for approximately nine years as a welder by Defendant-Employer. Plaintiff's job duties required him to be able to lift from 50 to 100 pounds. Plaintiff had a tenth grade education and had always worked in manual labor such as welding.
2. Plaintiff has a history of back problems. Prior to the current claim, Plaintiff treated with Dr. Chason Hayes at the Arthritis Clinic and Carolina Bone Joint from approximately August 10, 2000 through November 27, 2007. Plaintiff had previous back injuries but was always able to return to work following the prior injuries. Dr. Hayes always treated Plaintiff for his prior back injuries. During the time he treated with Dr. Hayes, Plaintiff *Page 4 
was diagnosed with lower back pain with radiation into the bilateral calves. Plaintiff underwent lumbar discectomy/disc decompression at L4-5 and L5-S1 in 2007 and returned to work.
3. On April 24, 2008, Plaintiff suffered a low back injury arising out of and in the course of his employment with Defendant-Employer when a tank weighing approximately 250 pounds shifted onto him and he grabbed it to keep it from falling on him. Plaintiff was taken from the plant by ambulance to the hospital. Defendants accepted this claim as compensable on an Industrial Commission Form 60.
4. On May 29, 2008, Plaintiff saw Dr. Hayes with complaints of back pain. Plaintiff denied numbness, tingling or radicular symptoms. Dr. Hayes diagnosed Plaintiff with acute lumbar strain, prescribed medication, and referred Plaintiff to physical therapy. Plaintiff was written out of work. On June 27, 2008, Dr. Hayes noted that Plaintiff's treatment was going to be handled by workers' compensation and would be transferred to another physician.
5. On June 17, 2008, when Plaintiff saw Dr. Sarjoo Bhagia with OrthoCarolina, he had complaints of pain in the lower lumbar area with occasional radiation to the left thigh. Dr. Bhagia referred Plaintiff for an MRI, referred him for physical therapy, and wrote him out of work indefinitely.
6. An MRI of Plaintiff's lumbar spine on June 25, 2008 reflected a small annular tear with the disc at the L4-L5 level. A small left paracentral disc herniation at the L5-S1 level appeared to contact the left S1 nerve root. No enhancing scar tissue was identified within the spinal canal or lumbar neural foramina.
7. On July 18, 2008, Plaintiff returned to Dr. Bhagia reporting a 20% improvement in his back. Upon review of the MRI, Dr. Bhagia opined that Plaintiff had left S1 radiculopathy secondary to disc protrusion at the L5-S1 disk, lumbar degenerative disk disease at L4-L5 and *Page 5 
L5-S1, and noted the August 16, 2007 disc decompression surgery. Dr. Bhagia recommended that Plaintiff undergo a left S1 nerve root block and placed him on work restrictions of no lifting more than 20 pounds and no prolonged bending, stooping, squatting, kneeling, or twisting with a follow-up visit in four weeks. Plaintiff attempted to return to work light duty from July 21, 2008 through July 23, 2008.
8. On August 28, 2008, Plaintiff returned to Dr. Baghia with a chief complaint of back pain and left leg pain. Dr. Bhagia noted that Plaintiff wished to proceed with surgical intervention directly and that Plaintiff went to work for about three days with restrictions provided to him by Dr. Bhagia but could not tolerate the work due to pain. Plaintiff also reported that his restrictions were not followed by his employer.
9. On September 2, 2008, Plaintiff underwent left S1 nerve root block. Plaintiff did not receive significant relief from the injection and wanted to explore surgical options. On September 23, 2008, Dr. Bhagia referred Plaintiff to Dr. Leo Spector for consideration of microdiscectomy of the L5-S1 disk.
10. Plaintiff saw Dr. Spector on October 16, 2008. Dr. Spector diagnosed Plaintiff with left L5-S1 small paracentral disk herniation with left S1 radiculopathy. Dr. Spector had a lengthy conversation with Plaintiff and explained the changes at L4-5 and L5-S1. Dr. Spector suggested a left L5-S1 microdiscectomy, but wanted to obtain a second opinion from Dr. Craig Brigham.
11. Plaintiff saw Dr. Brigham for a second opinion on October 30, 2008. Dr. Brigham advised Plaintiff that his back condition was regularly treated by surgical intervention. He referred Plaintiff back to Dr. Spector to undergo left L5-S1 microdiscectomy. He also indicated that Plaintiff should remain out of work until re-evaluated. *Page 6 
12. Dr. Spector performed a left L5-S1 microdiscectomy on November 24, 2008. On December 8, 2008, Plaintiff advised Dr. Spector that overall his symptoms had improved but that he continued to have pain in his back and left posterior thigh. Dr. Spector prescribed medications and referred Plaintiff to physical therapy.
13. Plaintiff participated in ten physical therapy appointments with Carolinas Healthcare System from December 16, 2008 to January 7, 2009. Upon completion, Plaintiff continued to complain of weakness in his left lower extremity. As Plaintiff was limited to tolerating standing for 15 minutes and sitting for 40 minutes, the therapist recommended work conditioning in preparation for return to work. Dr. Spector agreed, and on January 8, 2009, Plaintiff was referred to a work conditioning program for which he attended every scheduled treatment.
14. Plaintiff completed the work conditioning program on February 19, 2009. The final evaluation showed that Plaintiff was able to occasionally engage in repetitive squatting, frequent reaching overhead and forward, pushing and pulling up to 40 pounds and lifting and carrying 16 pounds. It also showed that Plaintiff was limited in his sitting and standing. The final evaluation showed that Plaintiff gave full effort and cooperation.
15. On February 19, 2009, Plaintiff saw Dr. Spector for the last time. Plaintiff reported that his symptoms were worse following work hardening and that he had low back pain with radiation into his buttock and posterior thigh with heavy lifting. He also reported some weakness in his foot with prolonged walking. The nurse case manager report from this visit reveals that Plaintiff asked Dr. Spector to return him to work unrestricted but that Plaintiff was concerned about being able to perform the physical demands of his job. Dr. Spector was concerned that if he restricted Plaintiff, then Plaintiff would be unable to work. *Page 7 
16. Physical examination revealed that Plaintiff's bilateral lower extremities were distally neurovascularly intact. Plaintiff had a negative straight leg raise on the left side. Dr. Spector opined that Plaintiff had reached maximum medical improvement and he released Plaintiff to return to work without specific restrictions effective February 23, 2009. In assigning no specific restrictions to Plaintiff, Dr. Spector relied upon a study regarding risk of re-injury following microdiscectomy. He assigned a ten percent impairment rating pursuant to the Industrial Commission guidelines for a ruptured lumbar disc that required surgery with objective finding of ongoing pain.
17. Dr. Spector opined that the lack of restrictions was based upon his determination that Plaintiff could perform any tasks and would not reinjure his back. While he recognized that Plaintiff would experience pain, Dr. Spector did not consider Plaintiff's pain in assessing restrictions or limitations but acknowledged objective evidence of pain. Further, Dr. Spector did not place any value on the functional capacity evaluation performed at the close of Plaintiff's work conditioning program. Dr. Spector opined that Plaintiff should work through his pain or attempt to find work in a less physically demanding position.
18. Upon his release from Dr. Spector, Plaintiff returned to work for Defendant-Employer on February 25, 2009 as a forklift operator, at his pre-injury wages, but only for a short period of time. The person operating the forklift has to move the pallets or slide them around to get the forks of the forklift underneath the pallet. The pallets in the area where Plaintiff was working weighed approximately 40 pounds. When Plaintiff was driving the forklift, he had to get his co-workers to move the pallets for him. Plaintiff would obtain assistance in moving the pallets into position due to the pain resulting from the bending and pulling that was required. *Page 8 
19. The forklift driving caused an aggravation of Plaintiff's back pain. Sitting was particularly painful for him, and driving the forklift hurt his back. Plaintiff talked to Ken Carpenter, the owner, about the possibility of any lighter duty positions, but there were none available. He told Mr. Carpenter about the pain and the problems that he was having performing the forklift driving position.
20. Plaintiff worked in the forklift job for five days until March 4, 2009 when the forklift driving position was eliminated. After the forklift driving position was eliminated and Plaintiff was terminated, Employer-Defendant did not advertise the forklift position. Rather, the position was filled as parts of other jobs at the plant, as it had been before Plaintiff returned to work just two weeks earlier.
21. Subsequent to being terminated, Plaintiff began receiving unemployment benefits in the amount of $345.00 a week. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to receive unemployment benefits and had searched for jobs that he had experience in, such as being a welder, a mechanic, a forklift operator, and a heavy equipment operator as this was all that he knew how to do. Plaintiff also obtained his GED during this period of time so that he could improve his chances of finding suitable employment. The Full Commission finds based upon the greater weight of the evidence that Plaintiff would benefit from vocational rehabilitation.
22. The most that Plaintiff had been able to lift since his release by Dr. Spector was a forty pound bag of fertilizer; this caused him to have an increase in pain for several days after doing so. Dr. Hayes reviewed Plaintiff's FCE results and opined that he would have released Plaintiff at the medium physical demand level, with lifting up to about 16 pounds. He further opined that Plaintiff could not return to unrestricted work on February 25, 2009. Dr. Hayes *Page 9 
noted that driving a forklift would increase axial loading on the spine which could have aggravated Plaintiff's back pain, and opined that it is a very common problem for people with that job duty.
23. The Full Commission finds as fact that upon his release by Dr. Spector, Plaintiff was capable of medium duty work, with lifting up to approximately 16 pounds, and Plaintiff suffered significant pain with sitting, increased activity, and lifting. The Full Commission further finds that the forklift operator position performed by Plaintiff following his release did not establish wage earning capacity. The greater weight of the evidence also shows that Plaintiff's return to work February 25, 2009 as a forklift operator for five days was an unsuccessful trial return to work.
24. Dr. Hayes has treated Plaintiff since 2000 for back related injuries and is familiar with Plaintiff's condition. Dr. Hayes initially treated Plaintiff for this injury before his care was transferred to OrthoCarolina by the workers' compensation carrier. The Full Commission gives considerable weight to Dr. Hayes' testimony as to Plaintiff's limitations. Weighing the testimony of Dr. Spector and Dr. Hayes, the Full Commission assigns greater weight to the opinion of Dr. Hayes on the issue of appropriate restrictions for Plaintiff.
25. The Full Commission finds Plaintiff to be credible. Plaintiff has been compliant with all medical treatment and asked Dr. Spector to release him without restrictions as required by Defendant-Employer so that he could attempt to return to work. The work that Plaintiff was offered caused him a great deal of pain. Plaintiff's testimony in this regard was also not materially contradicted and the Full Commission finds Plaintiff's testimony as to his level of pain to be credible. Plaintiff testified and the Full Commission finds that even though Plaintiff *Page 10 
attempted to perform the forklift job for five days that he was in severe pain when he did so and needed assistance from his co-workers to move pallets.
26. The Full Commission finds as fact that on April 24, 2008, Plaintiff suffered a back injury as a result of a specific traumatic incident of the work assigned by Defendant-Employer. As a result, Plaintiff was temporarily totally disabled from employment from April 25, 2008 through February 24, 2009, when he attempted a trial return to work through March 4, 2009 driving the forklift. However, this attempt to return to work was unsuccessful. The Full Commission finds that Plaintiff was temporarily totally disabled from employment from March 5, 2009 and ongoing.
27. Plaintiff's average weekly wage was $550.00 and his compensation rate was $366.69.
28. Neither party has prosecuted or defended this case without reasonable basis.
 ***********
Based on the foregoing Stipulations and Findings of Fact the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by specific traumatic incident arising out of and in the course of the employment on April 24, 2008. N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, Plaintiff must prove that he *Page 11 
was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982).
3. An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistrib., supra.
4. Plaintiff's return to work on February 25, 2009 was an unsuccessful trial return to work under N.C. Gen. Stat. § 97-32.1. The five days that Plaintiff worked as a forklift operator did not establish wage earning capacity. While Plaintiff was laid off on March 4, 2009 due to a decrease in work and elimination of the position, Plaintiff is not precluded from establishing total disability if due to Plaintiff's injury he was not able to obtain a job in the competitive labor market. Britt v. Gator World, Inc.,185 N.C. App. 677, 648 S.E.2d 917 (2007).
5. The greater weight of the evidence shows that following Plaintiff's termination on March 4, 2009, Plaintiff complied with all vocational efforts, engaged in a job search, and obtained his GED. Plaintiff has made a reasonable effort to obtain suitable employment. After a reasonable effort, Plaintiff has been unsuccessful in finding suitable employment due to his compensable injury. Russell v. Lowes Product Distrib., supra. As a result of the compensable *Page 12 
injury, Plaintiff is entitled to temporary total disability compensation at the rate of $ 366.69 per week for the period from April 24, 2008 through February 24, 2009 when he attempted a trial return to work. N.C. Gen. Stat. § 97-29. Plaintiff is also entitled to temporary total disability compensation at the rate of $366.69 per week beginning March 5, 2009 and ongoing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability, including but not limited to vocational rehabilitation, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19); 97-25.
7. Defendants are not entitled to sanctions pursuant to N.C. Gen. Stat. § 97-88.1.
8. Defendants are entitled to a credit for unemployment benefits paid to Plaintiff during his period of disability. N.C. Gen. Stat. § 97-42.1.
9. Defendants are entitled to a credit or offset for the $363.00 paid to Plaintiff as wages in light-duty employment during his period of disability from July 21, 2008 through July 23, 2008. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $366.69 per week from March 5, 2009 and continuing until further Order of the Industrial Commission, subject a credit for *Page 13 
unemployment benefits paid and a credit for wages in the amount of $363.00 paid to Plaintiff during his period of disability. Any amount of benefits that has accrued shall be paid to Plaintiff in a lump sum, with a reasonable attorney's fee of 25% percent of this lump sum to be paid directly to Plaintiff's counsel.
2. A reasonable attorney's fee of 25% of the ongoing compensation awarded to Plaintiff in Paragraph 1 above is hereby approved. Every fourth payment shall be made directly to Plaintiff's counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act, including a second opinion and treatment with a physician of Plaintiff's choosing and vocational rehabilitation.
4. Defendants shall pay the costs.
This is the 21st day of January 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER