***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is Key Risk Insurance Company.
4. Plaintiff's average weekly wage is $724.60 per week, which yields a compensation rate of $483.09.
5. Defendants filed a Form 63 accepting the claim on a medical only basis.
6. The following documents, were received into evidence.:
 a. Stipulated Exhibit 1: Industrial Commission forms, medical records and bills;
 b. Plaintiff's Exhibit 1: Job search records;
 c. Plaintiff's Exhibit 2: Pay plan;
 d. Plaintiff's Exhibit 3: Pay stubs;
 e. Plaintiff's Exhibit 4: Employment Security Commission payment history.
7. The issues for determination by the Full Commission are whether plaintiff is owed temporary total disability benefits or temporary partial disability benefits and, if so, for what period and whether plaintiff is entitled to any additional benefits as a result of his compensable injury by accident on January 6, 2009. Additional issues are whether plaintiff should be awarded an attorney's fee prior to defendants' credit for unemployment insurance payments plaintiff received and whether defendants' denial of this matter was unreasonable and therefore plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 54 years old. Plaintiff is a high school graduate and completed two years of college.
2. Plaintiff began working for defendant-employer in 2001 in the parts department. Plaintiff sustained an injury on January 6, 2009 while throwing old scrap parts from a truck into a dumpster. The injury occurred when plaintiff jumped out of the truck and landed on a piece of loose asphalt or rock. Plaintiff experienced immediate pain in his right foot. Plaintiff reported the injury to his supervisor, Keith Lee, and began receiving medical treatment the next day at Urgent Care with Dr. Joseph Guarino.
3. Dr. Guarino assigned plaintiff work restrictions limiting him to mostly sitting and plaintiff began wearing a boot to help his symptoms. Plaintiff continued working at modified duties in his position as parts manager until February 2, 2009, at which time he was laid off from defendant-employer. On February 6, 2009 Dr. Guarino removed all work restrictions after completing and reviewing plaintiff's bone scan which was negative.
4. Plaintiff's layoff in February 2009 was not related to his injury by accident. The layoff affected approximately one third of defendant-employer's employees and was part of business downsizing that resulted in the consolidation of two store locations into one.
5. Plaintiff continued to have foot pain after being released from Dr. Guarino's care and called defendant-employer and its carrier requesting authorization for additional medical treatment. When plaintiff was unable to obtain authorization in a timely manner, he went on his own to see Dr. Cody Drake. Dr. Drake is a podiatrist who treated plaintiff previously for a toe condition in 2008. Plaintiff's first treatment with Dr. Drake after the compensable injury was February 19, 2009. Dr. Drake diagnosed plaintiff with a neuroma in the right foot. Plaintiff underwent surgery on April 29, 2009. Defendant-carrier subsequently authorized additional *Page 4 
treatment for the right foot injury with Dr. Drake. Dr. Drake agreed to continue seeing plaintiff as a workers' compensation patient.
6. When he began treating plaintiff in February 2009, Dr. Drake placed plaintiff on work restrictions which consisted of no prolonged standing or walking. The restrictions lasted until the date of plaintiff's surgery. After plaintiff's surgery on April 29, 2009, plaintiff was released to return to full-duty work on August 25, 2009. However, by plaintiff's next visit on October 29, 2009, his foot condition had regressed and plaintiff was placed back on restrictions which continue to be in place. Given what he learned at the October 29, 2009 appointment, Dr. Drake stated at his deposition that plaintiff was not doing as well as he thought when he saw plaintiff in August 2009. Dr. Drake further testified that from the date he first saw plaintiff until the date of his deposition, plaintiff should have been under work restrictions of no prolonged standing or walking, and periods of sitting mixed with periods of standing and walking.
7. Plaintiff undertook a job search after being laid off and maintained a job search log as part of his application for unemployment benefits with the Employment Security Commission. Plaintiff did not receive any offers of employment during his job search.
8. While searching for employment, plaintiff regularly checked with defendant-employer to see if any positions were available. Eventually plaintiff was told by Keith Lee that a parts consultant position had come open, and plaintiff was re-hired as of December 9, 2009.
9. Plaintiff received unemployment benefits in the amount of $406.00 per week during the entire time he was out of work from February 1, 2009 through December 9, 2009, when he was re-hired by defendant-employer. Although plaintiff made a reasonable job search, the only job that he was able to locate was the job with defendant-employer for lesser wages than *Page 5 
he earned pre-injury. There is no evidence of record that plaintiff could have obtained a higher paying job than the position with defendant-employer.
10. After being re-hired, plaintiff's foot continued to be sore and painful, although he was able to work and tolerate the pain. Plaintiff's duties as parts consultant required some standing and walking, but also a lot of sitting, approximately 50% of the time. In this position he filled parts orders at the technician counter and for walk-in customers.
11. Plaintiff was promoted to parts manager again, about two weeks before the hearing before the Deputy Commissioner. Plaintiff mostly has the option to sit or stand in that position. Plaintiff's foot continues to hurt, although no accommodations are being provided by defendant-employer.
12. Since being re-hired by defendant-employer in December 2009, plaintiff's pay has been less than what it was as parts manager prior to the layoff. Almost all employees were required to take a pay cut during the downsizing and consolidation due to the economic factors that equally affected all employees of the business.
13. As of the date of hearing before the Deputy Commissioner, plaintiff was continuing to work without accommodations or modifications from defendant-employer. The current staffing level is considered to be full staffing, and no employees are assigned to specifically assist plaintiff in any way to accommodate for his injury. The department is set up such that all the employees work together as a team and assist one another. This team approach is unrelated to plaintiff's injury. Plaintiff is capable of performing the full duties of his job.
14. Dr. Drake's treatment of plaintiff since February 19, 2009, including the foot surgery he performed in April 2009 for a neuroma in the right foot, was necessitated by the injury by accident at work on January 6, 2009. *Page 6 
15. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to have pain in his right foot. Dr. Drake's treatment plan consists of additional conservative treatment with adherence to the work restrictions of no continuous standing or walking for more than two hours, with an equal amount of time sitting thereafter. If such conservative treatment does not alleviate plaintiff's pain, Dr. Drake intends to perform additional exploratory surgery on the third webspace of the right foot to determine whether there is nerve entrapment or the nerve has regenerated. The optimal result from additional surgery would be no continued pain in the right foot and no work restrictions. The more likely result would be permanent numbness in the area of the third webspace with no work restrictions.
16. Plaintiff has not reached maximum medical improvement for his compensable injury.
17. Defendants did not defend this action without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 6, 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in an injury to his right foot. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has the burden of proving disability. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet this burden of proof, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury *Page 7 
wages was caused by plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
3. In the present case plaintiff met his initial burden to show that he was disabled. After plaintiff was laid off on February 2, 2009, he was capable of some work, but after a reasonable effort on his part, he was unsuccessful in his efforts to obtain suitable employment, until he returned to work for defendant-employer on December 9, 2009 at a lower wage. Britt v.Gator Wood, Inc., 185 N.C. App. 677, 648 S.E.2d 917 (2007);Russell v. Lowe's Product Distribution, supra. During the period February 2, 2009 through December 8, 2009, defendants did not show that suitable jobs were available for plaintiff and that plaintiff was capable of obtaining a suitable job, taking into account plaintiff's physical and vocational limitations.Demery v. Perdue Farms., Inc., supra. *Page 8 
4. As of December 9, 2009, plaintiff has shown that he was temporarily partially disabled in that he obtained employment at wages less than his pre-injury wages. Russell v.Lowe's Product Distribution, supra.
After December 9, 2009, defendants failed to show that plaintiff could have obtained employment at the same or higher wages.Britt v. Gator Wood, Inc., supra; Russell v. Lowe's ProductDistribution, supra.
5. As the result of plaintiff's compensable injury by accident, plaintiff was totally disabled and entitled to payment by defendants of temporary total disability compensation at the rate of $483.09 per week from February 2, 2009 and continuing until December 8, 2009. N.C. Gen. Stat. § 97-29.
6. As the result of plaintiff's compensable injury by accident, as of December 9, 2009, plaintiff was temporarily partially disabled and entitled to payment by defendants of temporary partial disability compensation at the rate of two-thirds of the difference between his average weekly wages before the injury and the average weekly wages which he was able to earn after December 9, 2009, subject to the 300 week limitation of N.C. Gen. Stat. § 97-30.
7. Defendants are entitled to a credit for unemployment benefits paid to plaintiff during the periods of his disability, but excluding the 25% attorney's fee to plaintiff's counsel for which no credit is being allowed. N.C. Gen. Stat. §§ 97-29;97-42; 97-42.1; Church v. Baxter Travenol Laboratories,104 N.C. App. 411, 409 S.E.2d 715 (1991); Estes v. N.C. StateUniversity, 89 N.C. App. 55, 365 S.E.2d 160 (1988).
8. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of the compensable injury for so long as such examinations, evaluations, and treatments effect a cure, *Page 9 
give relief, or lessen the period of disability, which are necessitated by the January 6, 2009 injury by accident. N.C. Gen. Stat. § 97-25.
9. Defendants' denial of this matter was not unreasonable and therefore plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $483.09 from February 2, 2009 until December 8, 2009. Beginning December 9, 2009, defendants shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between his average weekly wages before the injury and the average weekly wages which he was able to earn after December 9, 2009, subject to the 300 week limitation of N.C. Gen. Stat. § 97-30.
2. Such compensation as has accrued shall be paid to plaintiff in a lump sum, subject to a credit for unemployment benefits paid during those periods, except that no credit is allowed against unemployment benefits for the 25% attorney's fee approved below for plaintiff's counsel.
3. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee of 25% of the compensation awarded plaintiff. After deduction of the attorney's fee awarded above, defendants are entitled to take a credit for unemployment insurance payments made to *Page 10 
plaintiff. Of the ongoing temporary partial disability, defendants shall pay plaintiff's counsel 25% of such compensation awarded plaintiff.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable right foot injury and as may be required to effect a cure, provide relief, or lessen the period of disability, subject to the time limitations of N.C. Gen. Stat. § 97-25.1.
5. Defendants shall pay the costs due the Commission.
This 22nd day of February, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 11